# EXHIBIT A

## EMPLOYMENT AGREEMENT

between

Neology, Inc., 12760 Danielson Court, Suite A, Poway CA 92064-8850, a Delaware corporation

- hereinafter referred to as the "**Employer**"-

and

Mr. Joe Mullis, 1152 Breakaway Drive, Oceanside, CA 92057

- hereinafter referred to as "**Employee**"-

### RECITALS

A. Employer desires to employ Employee and Employee desires to accept such employment, in accordance with the terms of this Agreement.

B. Employee recognizes that the Employer and its past, present and future parent, subsidiary and other affiliates (collectively, the "Company") operates in a highly competitive environment and the importance to Company of ensuring Employee's loyalty and protecting Company's customers, employees, business information and inventions, goodwill, trade secrets and confidential and proprietary information. Accordingly, Employee has entered into and agrees to be bound by this Agreement in consideration of Employee's employment with Employer and being given access to Company's confidential information.

C. Employee acknowledges he is receiving good and valuable consideration for entering into this Employment Agreement (the "Agreement"), including the Non-Competition/Non-Solicitation provisions contained in Section 8 of this Agreement, and Employee acknowledges that this Agreement was negotiated between the parties hereto, that because Employee is being newly hired by the Employer, Employee was not previously entitled to the benefits conferred to Employee under this Agreement including without limitation the benefits of Section 11, and that Employee received bargained for consideration, in exchange for agreeing to the Non-Competition/Non-Solicitation provisions of this Agreement set forth in Section 8 of this Agreement, including Employer providing Employee access to Company's confidential and proprietary information.

### AGREEMENT

In consideration of the above recitals and the mutual promises set forth in this Agreement the parties agree as follows:

### 1. Nature and Capacity of Employment

1.1 <u>Employment Position</u>. Employer hereby agrees to employ Employee, and Employee agrees to accept such employment and perform services for Employer, pursuant to the terms and conditions set forth in this Agreement. Employee shall be employed in the position of General Manager Neology, or in such other position as may be assigned to him. Employee shall report to the Chief Executive Officer of Neology or such other person as Chief Executive Officer may designate, and shall perform such duties



and responsibilities for Employer and its Affiliates as Employer shall assign to him from time to time consistent with his position.

1.2 Responsibilities. Employee shall serve Employer faithfully and to the best of his ability and shall devote his full working time, attention and efforts to the business of Employer during his employment. Employee will follow applicable policies and procedures adopted by Employer from time to time, including without limitation policies relating to business ethics, conflict of interest, non-discrimination, confidentiality and protection of trade secrets. Employee will not engage in other employment or other material business activity, except as approved in writing by Employer's Board of Directors (the "Board"). Employee hereby represents and confirms that he is under no contractual or legal commitments that would prevent him from fulfilling his duties and responsibilities as set forth in this Agreement.

1.3 Conditions Precedent to Employment. This Agreement and Employee's employment with Employer will not become effective unless and until Employee has satisfied all conditions of employment established by Employer, including satisfactory results of a background check and drug test, and verification of Employee's authorization for employment.

## 2. Employment Period

Employee's employment hereunder shall commence as of the July 15, 2014 and shall continue until such employment is terminated pursuant to Section 11 of this Agreement (the "Employment Period"). The last day of Employee's employment with Employer shall be the "Termination Date".

## 3. Base Salary

3.1 Base Salary. During the Employment Period, Employer will pay Employee an annual base salary for services rendered at the rate of $170,000 (the "Base Salary"), which shall be paid according to Employer's normal payroll practices.

3.2 Review. Employer will review and may adjust the Base Salary in accordance with Employer's annual performance review cycle, and may take into account Employee's performance, Employer's financial performance, market conditions and other factors as determined by Employer. Any adjustment to Employee's Base Salary will be in the sole discretion of Employer.

## 4. Variable Remuneration

During the Employment Period, in addition to Base Salary Employee is eligible to participate in Employer's annual bonus program as in effect from time to time (the "Incentive Compensation"). The Target Bonus is $70,000 – terms and conditions are laid down in the Employer's Incentive Policy. The Employer may, in its sole discretion, make changes to or terminate any such policy or program.

## 5. Employee Benefits/Leave

During the Employment Period, Employee shall be entitled to:

(i) Participate in the retirement plans, health plans, and all other employee benefits made available by Employer, to the extent that Employee meets the eligibility requirements for each such individual plan or program. Employer may, in its sole discretion, make changes to any such plan or program.

(ii) Paid vacation time off (prorated for any partial year) in accordance with the Employer's policies as in effect from time to time, with a minimum annual accrual of four 4 weeks. Vacation time must be taken by Employee in a manner so as to minimize disruption to Employer's operations.



### 6. Employment Benefit Plan

Employee acknowledges and agrees that Employer is under no obligation to Employee to establish or maintain any employee benefit plan in which Employee may participate, and that the terms and provisions of any employee benefit plan of Employer are matters within the exclusive province of the Board, subject to applicable law.

### 7. Outlays and Expenses

Fares, travel costs and expenses incurred by Employee in connection with his employment hereunder – to the extent that such costs are reasonable and necessary in the interests of Employer – shall be reimbursed subject to submission by Employee of appropriate documentation of such expenses and consistent with the Employer's travel policy and practices of Employer as may be in effect from time to time.

### 8. Non-Competition/Non-Solicitation

8.1 Acknowledgement by Employee. The parties acknowledge that (a) Employee will acquire special training and knowledge during the Employment Period; (b) Employee's services which are to be performed for Employer are of a special and unique nature; (c) Company operates in a highly competitive environment and would be substantially harmed if Employee were to compete with Company or divulge its confidential or proprietary information; (d) Employee has received valuable and sufficient consideration for entering into this Agreement, including but not limited to the benefits provided under Sections 3, 4 and 5 of this Agreement, the access to Company customers and employees, and the receipt of Confidential Information as defined in Section 9, and (e) the provisions of this Section 8, including all of its subparts, are reasonable and necessary to protect Company's business.

8.2 "Corporate Product" Defined. For purposes of this Agreement, "Corporate Product" means any product or service, including any component thereof and any research to develop information useful in connection with a product or service that has been or is being designed, developed, manufactured, marketed or sold by Company.

Employee understands and acknowledges that, at the present time, Corporate Products include without limitation RFID tags, transponders and inlays. The parties understand and acknowledge that the products and services comprising Corporate Products may change over time, and the provisions of this Section 8 and all of its subparts that relate to periods of time following the termination of Employee's employment shall apply with respect to the Corporate Products as determined as of the date of termination of the Employment Period.

8.3 "Competitive Product" Defined. For purposes hereof, "Competitive Product" means any product or service (including any components thereof and any research to develop information useful in connection with the product or service) that is being designed, developed, manufactured, marketed or sold by any person or entity other than Company that is of the same general type, performs similar functions, or is used for the same purpose as a Corporate Product on which Employee worked, with which Employee assisted Company during Employee's employment, or about which Employee has had access to Confidential Information.

8.4 Non-Compete Obligations. Employee agrees that, during the Employment Period and for a period of six (6) months following the Termination Date, regardless of the reason for termination, Employee will not, directly or indirectly, render services to any person or entity that designs, develops, manufactures, markets or sells a Competitive Product in any geographic area where Company designs, develops, manufactures, markets or sells a Corporate Product.



Employee understands and acknowledges that, at the present time, Company operates its business and has customers throughout the international market. Employee understands and acknowledges that the Company's geographic market may change, and the provisions of this Section 8 and all of its subparts that relate to periods of time following the termination of Employee's employment shall apply with respect to the geographic markets of Company as determined as of the Termination Date.

8.5 Non-Solicitation of Customers. During the Employment Period and for a period of six (6) months after the Termination Date, regardless of the reason for such termination, Employee will not, directly or indirectly, with respect to any Competitive Product solicit business from any customer or prospective customer of Company to which Employee has solicited, marketed, serviced, supported, or sold during the two year period immediately preceding the Termination Date.

8.6 Non-Solicitation of Employees or Business Contacts. During the Employment Period and for a period of twelve (12) months after the Termination Date, regardless of the reason for such termination, Employee will not, directly or indirectly, take any action to encourage, solicit or recruit any employee, consultant, independent contractor, subcontractor, supplier, vendor, or other business relation of Company to terminate or otherwise negatively alter their relationship with Company.

8.7 Disclosure of Obligations. Employee agrees that, during the Employment Period and for a period of twelve (12) months after the Termination Date, regardless of the reason for such termination, Employee shall, prior to accepting employment or any other business relationship with any other person or entity, inform that person or entity of Employee's obligations under Sections 8 and 9, including all of their subparts.

### 9. Confidential Information

9.1 Definition of Confidential Information. As used in this Agreement, the term "Confidential Information" shall mean any information which Employee learns of or develops during the Employment Period that derives independent economic value from being not generally known or readily ascertainable by other persons who could obtain economic value from its disclosure or use, and includes, but is not limited to, trade secrets, Inventions as defined in Section 10 below, financial information, personnel information, and information relating to such matters as existing or contemplated products, services, profit margins, fee schedules, pricing, design, processes, formulae, business plans, sales techniques, marketing techniques, training manuals and materials, policies or practices related to Company's business, personnel or other matters, computer databases, computer programs, software and other technology, customer lists and requirements, vendor lists, or supply information. Confidential Information includes such information of Company, its customers, vendors, and other third parties or entities with whom Company does business.

Any information disclosed to Employee or to which Employee has access during the time of Employee's employment that Employee reasonably considers to be Confidential Information, or which the Company treats as Confidential Information, will be presumed Confidential Information.

9.2 Restrictions on Use or Disclosure of Confidential Information. Employee shall keep the Confidential Information in absolute confidence both during the Employment Period and after the Termination Date, regardless of the reason for such termination. Employee agrees that Employee will not, at any time, disclose to others, use for Employee's benefit or the benefit of any other entity or person other than Company, or otherwise take or copy any such Confidential Information, whether or not developed by Employee, except as required in Employee's duties to Employer.

9.3 Restrictions on Disclosure of Compensation. The Employee may not divulge any information regarding his remuneration to third parties. This does not apply to cases where he is legally obligated to provide such information, for example, to federal, state, or local tax authorities. In addition, the Employee may



disclose information regarding his remuneration to his spouse, financial, tax, and legal advisors, and financial institutions.

9.4 Return of Confidential Information and Property. When the Employment Period terminates, regardless of the reason for such termination, Employee will promptly turn over to Employer in good condition all Company property in Employee's possession or control, including but not limited to all originals, copies of, or electronically stored documents or other materials containing Confidential Information, regardless of who prepared them. In the case of electronically stored information retained by Employee outside of Company's electronic systems, Employee will promptly make a hard copy of such information in paper, audio recording, disc format, or other format as requested by Employer, provide that copy to Employer, and then destroy all electronically stored information. Further, Employee agrees to provide Employer with written confirmation that all Confidential Information in the Employee's possession, or to which the Employee has access, has been turned over to Employer.

9.5 Confidential Information and Trade Secrets of Others. Employee agrees that he will not disclose or otherwise use the confidential information or trade secrets of any third party which Employee learned of prior to or otherwise outside the scope of his employment with Employer.

### 10. Inventions

10.1 Definition of Inventions. As used in this Agreement, "Inventions" means any inventions, improvements, trade names or trademarks, trade secrets, discoveries, designs, formulae, ideas or original works of authorship (whether or not reduced to writing, other media or practice and whether or not patentable or copyrightable), or work product originated, conceived, developed, discovered or made in whole or in part solely by Employee or jointly with others that relate, directly or indirectly, (a) to Company's business; (b) to Company's actual or demonstrably anticipated research or development; (c) that are made through the use of any of Company's equipment, facilities, supplies, trade secrets or Confidential Information; (d) that result from any work Employee performs for Company; or (e) that are developed on Company time.

10.2 Ownership of Inventions. With respect to Inventions originated, conceived, developed, discovered or made in whole or in part solely or jointly by Employee at any time during the Employment Period or during the one year period after the Termination Date, Employee understands and agrees that Employer will own all right, title, and interest, including patent rights, copyrights, trade secret rights and all other intellectual property rights of any sort, throughout the world related to all Inventions without further payment beyond Employee's agreed-upon salary or wage. To the maximum extent permitted by law, all Inventions are deemed "works made for hire" under the United States Copyright Act and Employer is deemed the sole author of any Inventions. To the extent any Inventions are determined not to constitute "works made for hire," Employee hereby assigns and transfers to Employer all right, title and interest in the Inventions.

Employee further agrees to:

(a) Promptly and fully disclose all such Inventions to Employer;

(b) Keep accurate, complete, and timely records of all Inventions, which records shall be Employer's property and shall be maintained on Employer's premises;

(c) At Employer's expense, assist Employer to perfect, protect, and use its rights to Inventions, including without limitation, transferring Employee's entire right, title and interest in Inventions and enabling Employer to obtain patent, copyright or trademark protection for Inventions anywhere in the world; and

(d) Give affidavits and testimony as to facts within Employee's knowledge in connection with any Inventions in any administrative proceedings, arbitration, litigation or controversy relating thereto.



In addition, the Employee agrees to promptly disclose: (i) any patents, pending patents, inventions, trade secrets or copyrighted works ("Employee Intellectual Property") that Employee creates or acquires prior to the Employment Period that Employee believes should not be subject to this Agreement; and (ii) any Employee Intellectual Property that Employee creates or acquires during the Employment Period that Employee believes should not be subject to this Agreement. If Employee does not promptly disclose any Employee Intellectual Property that Employee believes should not be subject to this Agreement, Employee acknowledges that such non-disclosure will be considered a material representation under this Agreement that, prior to and during the course of the Employment Period, Employee has no claim of ownership or other rights to any Employee Intellectual Property.

10.3 <u>Notice Regarding Exception to Inventions Assignment</u>. Employee understands that the assignment of Inventions set forth herein does not apply to any invention for which no equipment, supplies, facilities, confidential, proprietary or secret knowledge or information, or other trade secret information of Employer was used and that was developed entirely on Employee's own time, and (a) that does not relate (i) directly to the business of Company, or (ii) to Company's actual or demonstrably anticipated research or development, or (b) that does not result from any work performed by Employee for Company.

**11. Termination of Employment**

Employee's employment may be terminated as follows:

11.1 <u>For Cause Termination, Without Severance</u>. Notwithstanding anything contained herein to the contrary, the Employer may discharge Employee for Cause immediately upon written notice to Employee. For purposes of this Agreement, "Cause" shall mean the occurrence of any of the following as determined in good faith by the Employer:

(i) any act of dishonesty, gross misconduct or other conduct or omission that, in any case, injures the integrity, character or reputation of Company, or otherwise impairs Employee's ability to effectively perform services hereunder; or

(ii) the commission by Employee of any act that constitutes a felony or other crime that may be punishable by imprisonment of more than one year; or

(iii) material failure of Employee to perform his duties and responsibilities hereunder or to satisfy his obligations as an officer or employee of Employer, including without limitation the violation of established policies of Employer or lawful instructions from the Board, which failure (if curable) has not been cured by Employee within thirty (30) days after written notice thereof to Employee from Employer; or

(iv) any material breach of any terms and conditions of this Agreement by Employee, which breach (if curable) has not been cured by Employee within thirty (30) days after written notice thereof to Employee from Employer.

If the Employer terminates Employee's employment for Cause pursuant to this Section 11.1, Employee shall not be entitled to severance pay or to any bonus or incentive compensation of any kind.

11.2 <u>Without Cause, With Severance</u>. The Employer may terminate Employee's employment at any time and for any reason without Cause by providing written notice to Employee at least thirty (30) days prior to the Termination Date (the "Employer's Notice Period"). Upon providing written notice, Employer may elect either (a) to have Employee continue performing work for Employer until the Termination Date; or (b) at any time during the Employer Notice Period, to terminate Employee's employment and pay Employee with his final paycheck a lump sum amount equal to Employee's then-current Base Salary that would have been earned for the remainder of the Employer Notice Period.



Provided that Employee meets all of the Severance Pay Conditions (as hereinafter set forth in this Section 11.2), the Employer shall pay Employee severance pay equal to six months of Employee's Base Salary, as in effect as of the Termination Date ("Severance Pay"), payable in accordance with the Employer's regular payroll cycle during the six-month period following the Termination Date, provided, however, that any Severance Pay that would be paid before the release of claims required by the Severance Pay Conditions becomes final shall be held and paid on the first payroll date after such release is final.

Employee shall only be entitled to receive the Severance Pay described herein if Employee signs and does not rescind a release of claims in a form prepared by Employer that includes adequate provisions for the following: (i) Employee's general release of any and all legal claims; (ii) Employee's return of all of Employer's property in Employee's possession; (iii) non-disparagement of Employer and its representatives; (iv) confidentiality of terms; and (v) acknowledgement of Employee's continuing contractual obligations to Employer, including Employee's continuing non-competition, non-solicitation, confidentiality, return of property, and invention obligations under Sections 8, 9, and 10 of this Agreement (collectively, all of the conditions set forth in this paragraph shall hereinafter be referred to as the "Severance Pay Conditions.")

11.3 <u>Resignation by Employee. Without Severance</u>. Employee may resign Employee's position by providing written notice to the Employer thirty (30) days prior to Employee's intended Termination Date. At any time during such notice period, the Employer may at relieve Employee from some or all of his duties and responsibilities for the Employer.

11.4 <u>Because of Death, Disability or Incapacity of Employee, Without Severance</u>. Employee's employment with Employer is terminated immediately upon the death of the Employee. If the Employee is unable to perform Employee's duties and responsibilities for more than ninety (90) days in any consecutive 12-month period, by reason of physical or mental disability or incapacity, the Employer may terminate Employee's employment upon thirty (30) days advance written notice to Employee. This paragraph does not relieve the Employer of any duty to reasonably accommodate a qualifying disability under the Americans with Disabilities Act, any legal duty under the Family Medical Leave Act, or any of its other duties pursuant to applicable law. If Employee's employment is terminated pursuant to this Section 11.4, Employee (or Employee's estate in the case of death) shall receive payment for Base Salary and benefits earned through the Termination Date as provided in Section 3.

11.5 <u>No Other Payments</u>. Unless otherwise provided in this Agreement, Employee shall only be entitled to the following in the event of Employee's termination of employment: (i) Base Salary and Incentive Compensation (for any full year of employment during the plan year) earned and unpaid through the date of termination; (ii) benefits under any employee benefit plan or program to the extent provided therein; and (iii) continued coverage under Employer's health and group term life insurance programs to the extent required under state or federal insurance continuation coverage laws.

### 12. Compliance and Remedies

Employee recognizes that if Employee violates this Agreement, including but not limited to Sections 8, 9 or 10 of this Agreement, irreparable damage will result to Employer that could not adequately be remedied by monetary damages. As a result, Employee hereby agrees that notwithstanding any other dispute resolution provisions of this Agreement, in the event of any breach by Employee of this Agreement, including but not limited to Sections Sections 8, 9 or 10 of this Agreement or in the event of apparent danger of such breach, Employer shall be entitled, in addition to any other legal or equitable remedies available to it, to an injunction to restrain Employee's violation of any portion of this Agreement, without a requirement to post bond, as well as Employer's attorney's fees and costs incurred in enforcing this Agreement.



### 13. Informal Dispute Resolution

Employee and Employer agree to make good faith efforts to resolve internally and without resort to formal dispute resolution any dispute that may arise out of or relate to Employee's recruitment, employment or the termination of Employee's employment with Employer, or any dispute regarding any of the provisions of this Agreement. This Section 13 does not affect any rights that either party may have in law or equity to immediately seek emergency or temporary injunctive and other equitable relief.

### 14. Legal Actions

14.1 <u>Jurisdiction and Venue.</u> Employee and Employer consent to the exclusive jurisdiction of the courts of the State of California for the purpose of resolving all issues of law, equity, or fact, arising out of or in connection with this Agreement. Any action involving claims for interpretation, breach, or enforcement of this Agreement shall be brought in such courts. Each party consents to personal jurisdiction over such party in the state and/or federal courts of California and hereby waives any defense of lack of personal jurisdiction. Venue, for the purpose of all such suits in the courts of the State of California, shall be in San Diego, California.

14.2 <u>Waiver of Jury Trial.</u> Employee and Employer expressly waive any and all rights to a jury trial with respect to any dispute arising out of or in connection with this Agreement.

### 15. Miscellaneous

15.1 <u>Integration.</u> This Agreement embodies the entire agreement and understanding among the parties relative to subject matter hereof and supersedes and replaces all prior agreements and understandings relating to such subject matter.

15.2 <u>Applicable Law.</u> All matters relating to the interpretation, construction, application, validity and enforcement of this Agreement shall be governed by the laws of the State of California without giving effect to any choice or conflict of law provision or rule, whether of the State of California or any other jurisdiction, that would cause the application of laws of any jurisdiction other than the State of California.

15.3 <u>Tax Withholdings.</u> Employer shall withhold from payments under this Agreement any amounts required or authorized to be withheld pursuant to law.

15.4 <u>Other Tax Matters.</u> This Agreement is intended to satisfy or be exempt from the requirements of Internal Revenue Code Sections 409A(a)(2), (3) and (4), including current and future guidance and regulations interpreting such provisions, including the exceptions for short-term deferrals, separation pay arrangements, reimbursements, and in-kind distributions, and shall be administered and interpreted accordingly. Each payment under this Agreement or any Employer benefit plan is intended to be treated as one of a series of separate payments for purposes of Code Section 409A and Treasury Regulation §1.409A-2(b)(2)(iii) (or any similar or successor provisions). If as of the Termination Date Employee is a "specified employee" under Code Section 409A(a)(2)(B)(i) and any applicable policy of Employer, then any payment under this Agreement that is treated as deferred compensation under Code Section 409A payable upon termination of Employee's employment or separation from service shall be delayed until the date which is six months after the date of Employee's "separation from service" as determined under Code Section 409A (without interest or earnings). To the extent that payments under this Agreement are payments under a "reimbursement plan" subject to Code Section 409A, the right to reimbursement may not be exchanged for cash or any other benefit, the amount of expenses eligible for reimbursement in one calendar year shall not affect the expenses eligible for reimbursement in any other calendar year, and the reimbursement of any eligible expense shall be made pursuant to Employer's normal policies and procedures for expense reimbursement, which shall be in any event no later than the last day of the calendar year following the calendar year in which the expense was incurred.



15.5 <u>Counterparts</u>.  This Agreement may be executed in several counterparts and as so executed shall constitute one agreement binding on the parties hereto.

15.6 <u>Binding Effect</u>. Except as herein otherwise provided to the contrary, this Agreement shall be binding upon and inure to the benefit of the Employer and its successors, assigns and personal representatives, including without limitation any affiliates of Employer, without any requirement of the consent of Employee for assignment of its rights or obligations hereunder.

15.7 <u>Notices</u>. All notices, requests and other communications hereunder shall be given in writing and deemed to have been duly given or served if personally delivered, or sent by reliable overnight courier, or sent by first class, certified mail, return receipt requested, postage prepaid, to the party at the address as provided below, or, to such other address as such party may hereafter designate by written notice to the other party:

    i. If to Employer, to the address of its then principal office.

    ii. If to Employee, to the address last shown in the records of Employer.

15.8 <u>Modification</u>. This Agreement shall not be modified or amended except by a written instrument signed by the parties. No term or condition of this Agreement shall be deemed to have been waived, except by a statement in writing signed by the party against whom enforcement of the waiver is sought. Any written waiver shall not be deemed a continuing waiver unless specifically stated, shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

15.9 <u>Severability</u>. The invalidity or partial invalidity of any portion of this Agreement shall not invalidate the remainder thereof, and said remainder shall remain in full force and effect. If the duration of, the scope of or any business activity covered by any provision of Sections 8, 9 or 10 is in excess of what is valid and enforceable under applicable law, such provision shall be construed to cover only that duration, scope or activity that is valid and enforceable. Employee and Employer agree that Sections 8, 9 or 10 shall be given the construction which renders their provisions valid and enforceable to the maximum extent, not exceeding its express terms, possible under applicable law.

15.10 <u>Headings</u>.  The section headings contained in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

15.11 <u>Survival</u>. Employee acknowledges and agrees that Employee's non-competition, confidentiality, return of property, and invention obligations under Sections 8, 9 or 10 of this Agreement shall survive the termination of this Agreement, and the termination of Employee's employment with the Employer, regardless of the reason for termination.

15.12 <u>Opportunity to Obtain Advice of Counsel</u>. Employee acknowledges that Employee has been advised by Employer to obtain legal advice prior to executing this Agreement, and that Employee had sufficient opportunity to do so prior to signing this Agreement.



**THIS AGREEMENT** was voluntarily and knowingly executed by the parties as of date first set forth above.

Neology Inc.

By: _____
Its:

**EMPLOYEE:**

_____
Joe Mullis