EMIL PETROSSIAN (SBN 264222)
epetrossian@glaserweil.com
ALEXANDER R. MILLER (SBN 294474)
amiller@glaserweil.com
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
600 West Broadway, Suite 2850
San Diego, CA 92101
Tel.: (619) 765-4380

*Attorneys for Plaintiff*
NEOLOGY, INC.

*Additional Counsel Listed on Signature Page*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEOLOGY, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH N. MULLIS, an individual; QORE4 LLC, a Nevada limited liability company; and DOES 1 to 20, inclusive,<br><br>Defendants. | CASE NO.: 25CV1744 JES BJW<br><br>**PLAINTIFF'S *EX PARTE* APPLICATION FOR EXPEDITED DISCOVERY AND MEMORANDUM IN SUPPORT**<br><br>[CIVIL L.R. 7-10] |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................5

II.   FACTUAL BACKGROUND .........................................................................5

III.  ARGUMENT ..................................................................................................7

    A.   Neology Has Sufficiently Identified The Doe Defendants ...................8

    B.   Neology Has Made A Good Faith Effort To Identify The Doe Defendants ............................................................................................12

    C.   Neology's Complaint Can Withstand A Motion To Dismiss .............13

        1.   Trade Libel Claim .....................................................................14

        2.   Interference with Contractual Relations Claim .......................14

    D.   Discovery Will Identify The Doe Defendants ....................................15

    E.   There Is No Prejudice To Named Defendants ....................................15

IV.   CONCLUSION .............................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AXS Grp. LLC v. Internet Referral Servs., LLC*,
   2024 U.S. Dist. LEXIS 216762 (C.D. Cal. Jan. 24, 2024) ............................. 8, 13

*Braunerd v. Governors of University of Alberta*,
   873 F.2d 1257 (9th Cir. 1989) .................................................................... 10

*Burri Law PA v. Skurla*,
   35 F.4th 1207 (9th Cir. 2022) ..................................................................... 9, 10

*Calder v. Jones*,
   465 U.S. 783 (1984) ...................................................................................... 9

*Columbia Ins. Co. v. Seescandy.com*,
   185 F.R.D. 573 (N.D. Cal. 1999) .................................................................. 8

*Est. of Bartolacci v. Cnty. Of San Diego*,
   2025 U.S. Dist. LEXIS 3180 (S.D. Cal. Jan. 7, 2025) ....................... 7, 8, 13, 15

*Gillespie v. Civiletti*,
   629 F.2d 637 (9th Cir. 1980) ....................................................................... 7

*Lewis v. Heritage Auctions*,
   2025 U.S. Dist. LEXIS 96385 (C.D. Cal. Feb. 7, 2025) ................................ 8

*Liberty Media Holdings, LLC v. Does*,
   2011 U.S. Dist. LEXIS 51526 (S.D. Cal. May 12, 2011) .............................. 11

*Marketo, Inc. v. Doe*,
   2018 U.S. Dist. LEXIS 197169 (N.D. Cal. Nov. 19, 2018) ............................ 8

*SCEcorp v. Superior Court*,
   3 Cal. App. 4th 673, 677 (Cal. App. Ct. 1992). ............................................ 14

*Strike 3 Holdings, LLC v. Doe*,
   2025 U.S. Dist. LEXIS 100241 (S.D. Cal. May 7, 2025) ............................. 13

*Twitch Interactive, Inc. v. Doe*,
   2019 U.S. Dist. LEXIS 132842 (N.D. Cal. Aug. 7, 2019) ....................... 7, 9, 15

**PLAINTIFF NEOLOGY'S *EX PARTE* APPLICATION FOR EXPEDITED DISCOVERY**

*Uber Techs. Inc. v. Doe*,
    2015 U.S. Dist. LEXIS 32979 (N.D. Cal. Mar. 16, 2015) ................................... 9

*Yelp Inc. v. Catron*,
    70 F. Supp. 3d 1082 (N.D. Cal. 2014) .............................................................. 10

*Yocum v. Rockwell Med. Techs.*,
    2012 U.S. Dist. LEXIS 89961 (S.D. Cal. Jun. 27, 2012) ................................... 11

*ZF Micro Solutions, Inc. v. TAT Capital Partners, LTD.*,
    82 Cal. App. 5th 992 (Cal. App. Ct. 2022) ........................................................ 14

**Other Authorities**

Fed. R. Civ. P. 26(d)(1) ................................................................................................ 7

## I. INTRODUCTION

In March 2025, Doe Defendants initiated an unlawful campaign to disrupt Neology Inc.'s ("Neology") business of providing tolling and traffic management solutions to customers including State agencies. Under the guise of being a consumer protection agency, a fictious entity calling itself "Consumer Protection Advocates," began sending emails to many Neology's customers disparaging Neology's products. It took aim at Neology's technology, falsely representing it was uniquely outdated, and it vastly overstated the merits of alternative technology. But as far as Neology can tell, no entity by the name of Consumer Protection Advocates exists. Instead, all facts point to named defendants Joseph Mullis ("Mullis") and QORE4 LLC ("QORE4," with Mullis, "Named Defendants") being behind these emails.

Neology, however, has already exhausted all efforts to confirm its suspicion to no avail. To date, Named Defendants have refused to confirm or deny their involvement in Consumer Protection Advocates. For its part, Consumer Protection Advocates has refused to identify or provide any information concerning the individual(s) behind the emails. Neology is thus seeking early discovery to identify the Doe Defendants in the form attached hereto as Exhibit A. These four interrogatories—each set to be served on Mullis and QORE4—are narrowly tailored to determine whether either or both are behind or involved in Doe Defendants' conduct. The answers to these questions will significantly impact the contours of this case and allow for more efficient proceedings going forward.

## II. FACTUAL BACKGROUND

In March 2025, an apparently fictious entity operating under the name "Consumer Protection Advocates" began emailing Neology's customers disparaging Neology's products. ECF 1 at ¶ 91. Specifically, Consumer Protection Advocates emailed the Los Angeles Department of Transportation, the Colorado Department of Transportation, the Oklahoma Turnpike Authority, the Bay Area Rapid Transit, the Utah Department of Transportation, the Riverside County Transportation Commission,

the Northwest Parkway, E-470 Public Highway Authority, the Orange County Transportation Authority, the North Texas Tollway Authority, and the Kansas Turnpike Authority from the email address consumerprotectionadvocates7@gmail.com and signed the email Consumer Protection Advocates only. *Id.* at ¶¶ 91-92. The purported consumer protection agency included no letterhead, no other contact information, and no names of its agents or principals in these emails. *Id.*

From behind this veil, Consumer Protection Advocates purported to bring attention to "critical technical flaws affecting tolling and consumer billing across [the customer's] toll road systems" and took aim at Neology's technology with false and misleading statements. *Id.* at ¶ 93. Those statements included the suggestion that Neology's technology was outdated and uniquely so. *Id.* at ¶ 94. In reality, however, only one manufacturer in the industry coalition (known as 6C) is using different technology. *Id.* Consumer Protection Advocates also asserted that modern technology would "eliminate" the issue attributed to Neology's technology. *Id.* at ¶ 95. This was an overstatement at best. The technology referenced in the emails as an alternative to Neology's technology would only reduce the already marginal risk of mischarges, not eliminate such risk as Consumer Protection Advocates asserted. *Id.*

The statements made to Neology's customers injured Neology's reputation. *Id.* at ¶ 98. While Neology cannot yet know the impact of the false and misleading statements on its future business, Neology was forced to expend significant resources mitigating and correcting Consumer Protection Advocates' emails instead of focusing its time and resources on its actual business. *Id.*

Neology has reason to believe Named Defendants are behind this fictious entity. The claims made in the emails regarding Neology's technology are similar to assertions that QORE4 has made about Neology's technology in its proposals to various state agencies. *Id.* at ¶ 96. And the timing of Consumer Protection Advocates interference aligns with Named Defendants' interference in Neology's business. *Id.* at ¶ 91. Recognizing, however, that Neology's informed belief was not enough to bring its

**PLAINTIFF NEOLOGY'S *EX PARTE* APPLICATION FOR EXPEDITED DISCOVERY**

claims directly against Named Defendants, Neology undertook further effort to find connection between Named Defendants and Doe Defendants. Declaration of Robert Haney ("Haney Decl.") ¶ 3. Neology conducted extensive public research for information about both Consumer Protection Advocates and its email, consumerprotectionadvocates7@gmail.com. *Id.* ¶¶ 3, 7-10. Neology also sent a letter to Consumer Protection Advocates, directly asking for identifying information, and a letter to Mullis's former counsel, requesting clarification on Mullis's or QORE4's association with Consumer Protection Advocates. ECF 1 at ¶ 96; *see also* Haney Decl. ¶¶ 4-6. These efforts were unsuccessful. Neology has since again asked Mullis's and QORE4's counsel in this matter to confirm or deny Defendants' involvement in the tortious scheme. Haney Decl. ¶ 11. Named Defendants' counsel has not done so. *Id.*

Neology was unable to confirm its suspicion of the Doe Defendants' identity without the aid of case discovery. It was thus forced to bring its claims against Doe Defendants instead of Named Defendants and it now moves for expedited discovery to reveal Consumer Protection Advocates' identity once and for all.

### III.  ARGUMENT

A court may authorize discovery to be taken before the parties' Rule 26(f) conference for "good cause." Fed. R. Civ. P. 26(d)(1); *Est. of Bartolacci v. Cnty. Of San Diego*, 2025 U.S. Dist. LEXIS 3180, at *5 (S.D. Cal. Jan. 7, 2025). The Ninth Circuit has held that "where the identity of the alleged defendant is not known prior to the filing of a complaint, . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identity, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Thus, district courts in the Ninth Circuit have often found good cause to authorize expedited discovery to ascertain the identity of a Doe defendant and frequently grant *ex parte* motions for such discovery. *See e.g., Twitch Interactive, Inc. v. Doe*, 2019 U.S. Dist. LEXIS 132842

(N.D. Cal. Aug. 7, 2019); *Est. of Bartolacci*, 2025 U.S. Dist. LEXIS 3180, at *15; *Lewis v. Heritage Auctions*, 2025 U.S. Dist. LEXIS 96385 (C.D. Cal. Feb. 7, 2025).

In doing so, these courts consider the following factors in determining whether a plaintiff has established good cause to seek the identity of a Doe defendant through expedited discovery: whether the plaintiff (1) identifies the Doe defendant with sufficient specificity that the Court can determine that the defendant is a real person who can be sued in federal court, (2) recounts the steps taken to locate and identify the defendant, (3) demonstrates that the action can withstand a motion to dismiss, and (4) establishes that the discovery is likely to lead to identifying information that will permit service of process. *Est. of Bartolacci*, 2025 U.S. Dist. LEXIS 3180, at *6 (citing *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-580 (N.D. Cal. 1999)). Discovery should be allowed here because Neology satisfies each of these factors and the need for such discovery outweighs prejudice to the responding parties, Named Defendants.

### A. Neology Has Sufficiently Identified The Doe Defendants

Under the first factor, a court must consider "whether the Plaintiff has identified the Defendants with sufficient specificity, demonstrating that each Defendant is a real person or entity who would be subjected to jurisdiction in this court." *Marketo, Inc. v. Doe*, 2018 U.S. Dist. LEXIS 197169, at *4 (N.D. Cal. Nov. 19, 2018) (internal citations omitted). Neology has done so.

First, Doe Defendants are real people. As Neology has alleged, Doe Defendants created an email address and authored the emails sent from that address targeting Neology's customers. ECF 1 at ¶¶ 8, 91-98. Neology has specifically identified that email address for the court. *Id.* Neology also wrote to Consumer Protection Advocates and the entity responded directly to Neology. *See id.* at ¶ 96. These are acts that can be perpetrated only by actual people. Simply put, it is clear that there is "an actual human" behind this corporate façade. *See AXS Grp. LLC v. Internet Referral Servs., LLC*, 2024 U.S. Dist. LEXIS 216762, at *8-9 (C.D. Cal. Jan. 24, 2024) ("it is critical that Plaintiff

8

**PLAINTIFF NEOLOGY'S *EX PARTE* APPLICATION FOR EXPEDITED DISCOVERY**

identify that there is an actual human involved in the downloading and sharing of Plaintiffs allegedly infringed works.") (internal citations omitted).

Second, the individual or entity behind the Doe Defendants is subject to personal jurisdiction in this Court. The Ninth Circuit has a three-prong test for evaluating whether a court can exercise personal jurisdiction over a non-resident defendant: (1) the defendant must purposefully direct his activities to the forum state, (2) the claim must relate to forum-related activities, and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *Twitch Interactive, Inc.*, 2019 U.S. Dist. LEXIS 132842, at *6-7. The first prong uses the "effects test" from *Calder v. Jones,* 465 U.S. 783 (1984) which focuses on the forum in which the defendant's actions were targeted and felt, whether or not the actions themselves occurred within the forum. *See Burri Law PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022) ("Jurisdiction may be constitutionally maintained in such a scenario even if the defendant never set foot in the forum state, if the defendant's contacts with the forum state are out-of-state acts that had an effect in the forum.").

Here, Consumer Protection Advocate's actions were intended to be felt, and were in fact felt, in California, where Neology is headquartered. ECF 1 at ¶ 20. Consumer Protection Advocate's wrote about Neology's products and business – activities conducted in California. *Id.* It then circulated these libelous emails in the State, directing activity into California by sending at least three emails to California state entities, specifically, the Los Angeles Department of Transportation, the Bay Area Rapid Transit, and the Orange County Transportation Authority, and thereby injuring Neology's reputation in the State. *Id.* at ¶ 91. Courts regularly find that in cases such as this one, that is enough to establish personal jurisdiction. *See e.g., Uber Techs. Inc. v. Doe*, 2015 U.S. Dist. LEXIS 32979, at *6 (N.D. Cal. Mar. 16, 2015) (granting early discovery where defendant Uber "has shown that a real person, John Doe I, may be subject to jurisdiction in this court by showing that the target of his misconduct is California, where Uber is headquartered."); *Twitch Interactive, Inc.*, 2019 U.S. Dist.

LEXIS 132842 (granting expedited discovery to identify John Doe where defendant targeted its wrongful acts at defendant headquartered in California); *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1093 (N.D. Cal. 2014) (finding personal jurisdiction was proper because the defendant's actions were directed at a California company and caused harm there); *Braunerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989) (in tortious interference and defamation case, finding personal jurisdiction because defendant's "communications were directed to [the forum state], even though he did not initiate the contact," and "[defendant] knew the injury and harm stemming from his communications would occur in [the forum state], where [plaintiff] planned to live and work.").

For example, in *Burri Law PA*, the court overturned a grant of a motion to dismiss for lack of personal jurisdiction where the defendant directed some communications towards the forum state that were defamatory and designed to interfere with a forum-state contract. 35 F.4th at 1213. The court explained that some of defendant's allegedly defamatory communications were sent to the forum state, circulated within the forum state, had a forum-state focus (as they concerned plaintiff's activities in the forum state), and were communicated for the very purpose of having their consequences felt in the forum state. *Id.* at 1214-15. The court held that "[w]here a defendant directs communications that are defamatory toward a forum state and seeks to interfere with a forum state contract, the defendant has purposefully directed conduct at the forum state, and the defendant knows or should know that such conduct is likely to cause harm in the forum state." *Id.* at 1209. This principle applies here with equal force.

As for the second prong of the jurisdictional analysis, there is no dispute that the claims against Doe Defendants—trade libel and interference with contractual relations—arise out of the above forum-related activities.

Finally, with respect to the third prong, personal jurisdiction is presumed to be reasonable in cases like this one, where the defendant purposefully directed his activities into the forum. *See Brainerd*, 873 F.2d at 1260. Moreover, California is also

**PLAINTIFF NEOLOGY'S *EX PARTE* APPLICATION FOR EXPEDITED DISCOVERY**

a convenient location for Neology, and, if Neology is right that Named Defendants are Consumer Protection Advocates, then the forum is convenient for Defendants, too. *See* ECF 1 at ¶ 11 (Mullis, QORE4's founder and CEO, is a resident of California). California will also be an efficient forum given that related claims are already pending in this district. Further, California has a strong interest in protecting its residents, like Neology, from torts that cause injury within the state. *Yocum v. Rockwell Med. Techs.*, 2012 U.S. Dist. LEXIS 89961, at *24 (S.D. Cal. Jun. 27, 2012) ("The Ninth Circuit has *consistently* explained that a forum state 'has a strong interest in protecting its residents from torts that cause injury within the state, and providing a forum for relief.'" (emphasis in original). For these reasons, personal jurisdiction is established.

Even in cases where the personal jurisdiction allegations against Doe defendants may lack merit, courts have allowed expedited discovery to determine the identity of Doe anyway. *See Liberty Media Holdings, LLC v. Does*, 2011 U.S. Dist. LEXIS 51526 (S.D. Cal. May 12, 2011). In *Liberty*, plaintiff went "so far as to assert 'on information and belief, each Defendant may be found in this District and/or a substantial part of the infringing acts complained of herein occurred in this District, and Defendants can reasonably anticipate being haled into court in this District,'" without providing "any information that would lead to the belief that either each Defendant can be found within this district or that a substantial part of the infringing acts alleged occurred in this District." 2011 U.S. Dist. LEXIS 51526, at *13-14. While this "troubled" the court, the court still concluded that "the issue of jurisdiction cannot be resolved without allowing the discovery sought," and therefore allowed plaintiff to serve discovery seeking information sufficient to identify the names, addresses, telephone numbers and emails of the defendants. *Id.* at *15-16. Thus, to the extent the Court still has questions about the personal jurisdiction of the Doe Defendants, other courts in this district have still allowed expedited discovery to proceed in cases with much weaker jurisdictional bases than exists here.

**PLAINTIFF NEOLOGY'S *EX PARTE* APPLICATION FOR EXPEDITED DISCOVERY**

B. **Neology Has Made A Good Faith Effort To Identify The Doe Defendants**

Neology has been diligent in trying to identify the Doe Defendants outside of the discovery process, but has been unable to do so. For starters, before filing its complaint, Neology searched through publicly available information to determine whether Consumer Protection Advocates is a real entity, whom it is associated with, and where it is located. Haney Decl. ¶¶ 3, 7-10. This involved searching for online presence both for the entity and its email address, performing a corporate search across states, performing an IRS search for any registrations, and using a reverse email tracer to search for any companies or agencies using the email address consumerprotectionadvocates7@gmail.com. *Id.* This yielded nothing relevant. *Id.*

Next, Neology sent a letter to both consumerprotectionadvocates7@gmail.com and Mullis's former counsel. ECF 1 at ¶ 96; Haney Decl. ¶¶ 4-6. In the letter to Consumer Protection Advocates, Neology asked that the entity provide (1) additional information about its organization, including its structure, the identity of executive officers and Board members involved, (2) contact information for the organization, including street address, email addresses, phone numbers, and its website, and (3) information regarding whether the organization is associated with, funded by, or has any members associated with any of Neology's competitors or other industry participants. Haney Decl. ¶ 4. Consumer Protection Advocates responded to the letter, by email, one day later stating that it "respectfully decline[d] [Neology's] request for organizational identification." *Id.* ¶ 5. In the letter to Mullis's counsel, Neology made a similar request: it asked Mullis to respond addressing whether he or QORE4 have any knowledge of and/or involvement with Consumer Protection Advocates or letters sent to Neology's customers discussing Neology's products. *Id.* ¶ 6. Mullis's counsel did not respond. *Id.*

After filing this lawsuit, Neology again contacted Mullis and QORE4 through their attorney to seek identifying information about Consumer Protection Advocates.

*Id.* ¶ 11. Defendants again would not confirm (or, tellingly, deny) their involvement, and refused to entertain any further inquiry into the matter. *Id.*

At this point, Neology has exhausted all means to obtain the identity of Doe Defendants without the aid of discovery. For this reason, the second factor is satisfied.

### C. Neology's Complaint Can Withstand A Motion To Dismiss

To satisfy the third factor for expedited discovery, all plaintiff must do is make "some showing that an act giving rise to civil liability actually occurred and that the discovery is aimed at revealing specific identifying information of the person or entity who committed that act." *Est. of Bartolacci v. Cnty. of San Diego*, 2025 U.S. Dist. LEXIS 3180, at *15-16 (S.D. Cal. Jan. 7, 2025) (finding that Plaintiff has made "some showing that an act giving rise to civil liability actually occurred and that the discovery is aimed at revealing specific identifying information of the person or entity who committed that act."). Put another way, Neology need only establish the *prima facie* elements of the claims and demonstrate its complaint is not "frivolous or obviously meritless on its face." *Strike 3 Holdings, LLC v. Doe*, 2025 U.S. Dist. LEXIS 100241, at *9 (S.D. Cal. May 7, 2025) ("Plaintiff has alleged facts that could establish the *prima facie* elements of direct copyright infringement and could withstand a motion to dismiss."), *Est. of Bartolacci*, 2025 U.S. Dist. LEXIS 3180, at *15. Neology's complaint is not subjected to an in-depth motion to dismiss analysis at this stage; rather, the question is only whether the claims would "clearly fail a motion to dismiss." *See*, *AXS Grp. LLC v. Internet Referral Servs., LLC*, 2024 U.S. Dist. LEXIS 216762, at *10-11 (C.D. Cal. Jan. 24, 2024) ("[D]istrict courts consider whether the complaint alleges sufficient facts pursuant to Rule 8 to put the defendant on notice of the claims against the defendant, whether the complaint alleges facts relating to personal jurisdiction and subject matter, and whether the complaint contains sufficient factual allegations to uphold the bases of the claims, if challenged by Rule 12(b)(6). . . . Although the allegations of the Complaint would be subject to a more in-depth analysis when challenged by a motion to dismiss, for purposes of the good cause analysis here, the

Court finds the allegations would not 'clear[ly] fail a motion to dismiss.'"). Neology's complaint more than satisfies this standard.

### 1. *Trade Libel Claim*

To successfully plead trade libel, Neology must allege (1) Doe Defendants' published a statement that tended to disparage Neology's product or property; (2) the statement was provably false; (3) Doe Defendants either knew the statement was false or acted with reckless disregard for its falsity; and (4) the statement caused actual pecuniary damage. *ZF Micro Solutions, Inc. v. TAT Capital Partners, LTD.*, 82 Cal. App. 5th 992, 1002 n. 5 (Cal. App. Ct. 2022). It has.

In its complaint, Neology alleges that in the emails to Neology's customers, the Doe Defendants made knowingly false statements that would be clearly or necessarily understood to have disparaged the quality of Neology's products and/or services. ECF 1 at ¶¶ 145-48. Neology further specifies what those disparaging statements are. *See id.* at ¶¶ 93-95. Neology's assertion is that these statements were made to interfere with Neology's business with its customers. *See, e.g., id.,* at ¶¶ 1, 107-113. Neology also alleges that it suffered financial harm as a result because it was required to engage and expend thousands of dollars mitigating the harm caused by such statements and that Doe Defendants' refusal to retract or withdraw the false statements was and continues to be a substantial factor in causing harm to Neology's business. *Id.* at ¶¶ 150-151. These factual allegations are sufficient to state a *prima facie* claim of trade libel.

### 2. *Interference with Contractual Relations Claim*

To successfully plead interference with contractual relations, Neology must allege (1) a valid and existing contract between it and a third party, (2) Doe Defendants' knowledge of the contract, (3) Doe Defendants' intentional acts designed to induce a breach or disruption of the contractual relationship, (4) actual breach or disruption, and (5) resulting damages. *SCEcorp v. Superior Court*, 3 Cal. App. 4th 673, 677 (Cal. App. Ct. 1992). Neology has done just that. It alleges that it had valid contracts with the Los Angeles Department of Transportation, the Colorado Department of Transportation, the

Oklahoma Turnpike Authority, the Bay Area Rapid Transit, the Utah Department of Transportation, the Riverside County Transportation Commission, the Northwest Parkway, the E-470 Public Highway Authority, the Orange County Transportation Authority, the North Texas Tollway Authority, and the Kansas Turnpike Authority, and that Doe Defendants knew of those contracts. ECF 1 at ¶¶ 137-39. Neology further alleges that Doe Defendants intended to and did disrupt those customer contracts by making false and misleading statements seeking to improperly influence customers to avoid Neology's products. *Id.* at ¶¶ 140-141. Neology suffered direct harm as a result: it was required to engage various professionals and expend thousands of dollars in fees to mitigate the harm caused by Doe Defendants' interference. *Id.* at ¶ 142.

Because this is not a situation where Neology's complaint is "frivolous or obviously meritless on its face," the third factor is satisfied. *See Est. of Bartolacci*, 2025 U.S. Dist. LEXIS 3180, at *15-16.

### D.   Discovery Will Identify The Doe Defendants

Neology seeks leave to propound four narrowly tailored interrogatories, attached hereto as Exhibit A, intended only to identify the Doe Defendants described in the complaint. They seek to establish Named Defendants are involved with Doe Defendants and further ask for any identifying information about other persons or entities involved with Doe Defendants. Particularly given Neology's informed belief that Named Defendants are connected to Doe Defendants, the requests are highly likely to identify the Doe Defendants' identities for purposes of this case and so the fourth factor is satisfied.

### E.   There Is No Prejudice To Named Defendants

The proposed discovery will not prejudice Named Defendants. *See Twitch Interactive, Inc.*, 2019 U.S. Dist. LEXIS 132842, at *4 ("Good cause exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.") The interrogatories will cause little to no burden. If Named Defendants have no relationship with Consumer Protection

**PLAINTIFF NEOLOGY'S *EX PARTE* APPLICATION FOR EXPEDITED DISCOVERY**

Advocates and were not involved in the emails to Neology's customers, they can simply answer the interrogatories by saying so. If Named Defendants do have a relationship or were involved, the description of the relationship or involvement is already within Named Defendants' knowledge, requires no further investigation, and is easily shared.

In fact, engaging in an early discovery process will actually protect against prejudice to **all** parties. If the Named Defendants are the Doe Defendants, the case will be further streamlined at the outset. Neology can file an amended complaint before Named Defendants have to file their responsive pleading, all of the parties will have been identified and served, and Neology will be able to target its substantive discovery accordingly. Therefore, Neology's need for discovery to identify Defendants outweighs any claimed prejudice to the Named Defendants.

## IV. CONCLUSION

Based on the foregoing, Neology has demonstrated good cause to conduct limited expedited discovery and respectfully requests that the Court grant its application and permit it to serve the four interrogatories attached hereto in Exhibit A on Named Defendants.

DATED: October 6, 2025

By: /s/ *Emil Petrossian*
Emil Petrossian
Alexander R. Miller
GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP

Robert Haney, Jr. (Admitted *Pro Hac Vice*)
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 812-0399
rhaney@foleyhoag.com

Leah Rizkallah (Admitted *Pro Hac Vice*)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel: (617) 832-1000
lrizkallah@foleyhoag.com

*Attorneys for Plaintiff*
NEOLOGY, INC.

**PLAINTIFF NEOLOGY'S *EX PARTE* APPLICATION FOR EXPEDITED DISCOVERY**