1  Nicholas S. Kawuka, Bar No. 297579
   nkawuka@swlaw.com
2  SNELL & WILMER L.L.P.
   3611 Valley Centre Drive, Suite 500
3  San Diego, California 92130-3324
   Telephone: 858.434.5020
4  Facsimile: 858.434.5006

5  Attorneys for Defendants
   QORE4 LLC and Joseph N. Mullis
6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  NEOLOGY, INC., a Delaware            Case No. 25CV1744 JES (BJW)
    corporation,
12                                       **DEFENDANTS QORE4 LLC AND
                    Plaintiff,           JOSEPH N. MULLIS'S
13                                       MEMORANDUM OF POINTS
         v.                              AND AUTHORITIES IN
14                                       SUPPORT OF NOTICE OF
    JOSEPH N. MULLIS, an individual;     MOTION AND SPECIAL
15  QORE4 LLC, a Nevada limited liability MOTION TO STRIKE UNDER
    company; and DOES 1 to 20, inclusive, CAL. CIV. PROC. § 425 AND
16                                       FED. R. CIV. P. 12(F) AND
                    Defendants.          MOTION TO DISMISS UNDER
17                                       FED. R. CIV. L. 12(B)(6)**

18                                       *[Filed concurrently with Notice of
                                         Motion and Special Motion;
19                                       Authorities; Request for Judicial
                                         Notice; and Declaration of Nicholas
20                                       S. Kawuka]*

21                                       Date:      January 28, 2026
                                         Time:      9:00 a.m.
22                                       Courtroom: 4B

23
                                         Complaint Filed: July 8, 2025
24                                       Trial Date: None Set

25  / / /

26  / / /

27  / / /

28  / / /

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1

II. RELEVANT FACTUAL BACKGROUND ................................................ 2

III. LEGAL STANDARD ............................................................................... 3

IV. ARGUMENT ............................................................................................ 4

    A. Counts III, IV, V, VI, and VII Arise from Protected Petitioning Activity and Public-Issue Speech Protected Under Section 425.16 and the Noerr-Pennington Doctrine ........................................... 4

        1. The CPA Emails to Public Agencies Concern Regular Public Consumers and Public-Contracting Issues ...................... 4

        2. Public-Records Requests and Challenges to Redactions Are Core Petitioning Activity Protected Under Section 425.16 ............................................................................................ 6

        3. At a Minimum, Allegations Attacking Lawful Conduct Should be Stricken Under Section 425.16 and Rule 12(f) .......... 9

    B. Neology Cannot Show a Probability of Prevailing as to Counts III, IV, V, VI, and VII Based on Protected Activity ............................ 10

        1. Counts V, VI, and VII Fail as a Matter of Law Because Neology Cannot Prevail on Its Claims of Trade Libel .............. 10

            i. The FAC Does Not Plead Actionable False Statements ........................................................................ 10

            ii. The Context of Publication and the Specific Audience Illustrate that the Statements are Not Actionable. ........................................................................ 13

            iii. Neology Fails to Plead Trade Libel Special Damages with the Required Specificity ........................... 13

        2. The Interference and UCL Claim (Count V and VII) Cannot Stand on Protected Petitioning and Non-Actionable Speech ...................................................................... 14

        3. Counts III and IV as Pled Fail Because the "Unlawfulness" Theory of Public Records Requests Is Not Sustainable. ....................................................................... 15

    C. Defendants Are Entitled to Attorneys' Fees and Costs ..................... 16

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

SNELL
& WILMER

4931-2519-3088

D.    Counts I through VII Should Be Dismissed under Rule 12(b)(6) .......16

1.    Count I (Breach of Contract) Should Be Dismissed: It Pleads No Recoverable Damages and is Partly Time-Barred ........................................................................17

i.    Count I Fails to Allege Plausible Recoverable Damages Beyond Nominal Damages .............................17

ii.    Alleged Breaches Before July 8, 2021 Are Time-Barred Under California Law ...........................17

2.    Count II (Intentional Interference with Contract by QORE4) Is Not Plausible on Its Face Because it is Circular ...........................................................................18

3.    Counts III and IV (Trade-Secrets) Fail to State a Claim ...........19

i.    Plaintiff Does Not Identify the Trade Secrets with Reasonable Particularity ....................................19

ii.    Many Alleged "Secrets" Are Publicly Disclosed or Obtainable from Neology's Website and Public Sources .................................................................21

iii.    The FAC Fails to Plead Plausible Misappropriation by Use or Disclosure ..........................................22

iv.    Lawful Public-Records Requests and Procurement Processes Are Not "Improper Means" as a Matter of Law ................................................................23

v.    Neology Does Not Plausibly Allege Ownership of Certain Information Claimed as "Trade Secrets" ...........23

vi.    Neology Does Not Allege Trade Secret Harm or Damages ...............................................................24

4.    Counts I and Count VII Fail as Preempted by CUTSA ...........24

5.    Count VII Fails to the Extent Underlying Claims Fail and In So Far as It Relies on Theories Not Pled in the FAC. ..........25

V.    CONCLUSION ...............................................................................25

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO SPECIAL MOTION TO STRIKE CASE NO. 25CV1744 JES (BJW)

4931-2519-3088

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Surety Co. v. Centennial Ins. Co.*,
838 F.2d 346 (9th Cir. 1988) ................................................................. 14

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ........................................................................ 18

*Baral v. Schnitt*,
1 Cal. 5th 376, 376 P.3d 604 (2016) ............................................... 9, 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................... 16, 17, 19, 23

*Bently Rsrv. LP v. Papaliolios*,
218 Cal. App. 4th 418 (2013) ......................................................... 13

*Bonni v. St. Joseph Health Sys.*,
11 Cal. 5th 995 (2021) ................................................................... 10

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ................................................................... 15

*City & Cnty. of S.F. v. Tutor-Saliba Corp.*,
No. 02-5286 CW, 2005 WL 645389 (N.D. Cal. March 17, 2005) ................... 17

*ComputerXpress, Inc. v. Jackson*,
93 Cal.App.4th 993 (2001) .................................................. 5, 10, 11

*Copart, Inc. v. Sparta Consulting, Inc.*,
277 F. Supp. 3d 1127 (E.D. Cal. 2017) ........................................... 25

*Erlich v. Etner*,
224 Cal.App.2d 69 (1964) ............................................................... 14

*Ferlauto v. Hamsher*,
74 Cal. App. 4th 1394 (1999) ......................................................... 12

*Franklin Fueling Sys., Inc. v. Veeder-Root Co.*,
No. S-09-580 FCD/JFM, 2009 WL 2462505 (E.D. Cal. Aug. 11, 2009) ................................................................................ 14

SNELL
& WILMER

4931-2519-3088

*Gregory v. McDonnell Douglas Corp.*,
    17 Cal. 3d 596, 552 P.2d 425 (1976)................................................... 12

*Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*,
    59 Cal. 4th 277 (2014)................................................................. 10

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
    No. CV 14-3954 DDP, 2014 WL 6892141 (C.D. Cal. Nov. 5, 2014)............... 14

*Iloh v. Regents of Univ. of Cal.*,
    94 Cal.App.5th 947 (2023)......................................................... 7, 8

*Imax Corp. v. Cinema Techs., Inc.*,
    152 F.3d 1161 (9th Cir. 1998)............................................. 19, 20, 21

*Iqbal v. Ashcroft*,
    556 U.S. 662 (2009) ....................................................... 17, 19, 23

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
    171 Cal. App. 4th 939 (2009).......................................................... 25

*Kahn v. Bower*,
    232 Cal. App. 3d 1599 (Ct. App. 1991) ............................................. 11

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001)................................................................. 16

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003)................................................................. 15

*Krantz v. BT Visual Images, L.L.C.*,
    89 Cal. App. 4th 164 (2001).......................................................... 25

*Lyft, Inc. v. City of Seattle*,
    190 Wn.2d 769 (2018).................................................................. 16

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) (en banc) ............................................. 3

*Mann v. Quality Old Time Serv., Inc.*,
    120 Cal.App.4th 90 (2004)......................................................... 3, 14

*Martinez v. Ford Motor Co.*,
    No. 22-CV-1082-MMA (BGS), 2022 WL 14118926 (S.D. Cal. Oct. 24, 2022)..................................................................................... 25

4931-2519-3088

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) .................................................................. 10

*Mgmt. & Eng'g Techs. Int'l, Inc. v. Info. Sys. Support, Inc.*,
   490 F. App'x 31 (9th Cir. 2012) ............................................................. 21

*Monster Energy Co. v. Schechter*,
   7 Cal.5th 781 (2019) ............................................................................... 10

*Navellier v. Sletten*,
   29 Cal. 4th 82, 52 P.3d 703 (2002) .......................................................... 8

*Neurelis, Inc. v. Aquestive Therapeutics, Inc.*,
   71 Cal.App.5th 769 (2021) ....................................................................... 5

*Neville v. Chudacoff*,
   160 Cal.App.4th 1255 (2008) ................................................................... 5

*Oasis W. Realty, LLC v. Goldman*,
   51 Cal. 4th 811 (2011) ............................................................................ 17

*Optional Capital, Inc. v Akin Gump Strauss, Hauer & Feld LLP*,
   18 Cal.App.5th 95 (2017) ........................................................................ 10

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   151 Cal. App. 4th 688 (2007) .................................................................. 13

*Park v. Board of Trustees*,
   2 Cal.5th 1057 (2017) ............................................................................... 3

*PG&E v. Bear Stearns & Co.*,
   50 Cal.3d 1118 (1990) ............................................................................ 18

*Reliant Life Shares, LLC v. Cooper*,
   90 Cal. App. 5th 14 (2023) ..................................................................... 19

*Rincon Band of Luiseno Mission Indians etc. v. Flynt*,
   70 Cal.App.5th 1059 (Cal. App. 2021) .................................................. 25

*RJL Industries Inc. V. Kapsch Trafficcom USA, Inc. et al.*,
   Case No. 7:25cv9277 (S.D.N.Y) ............................................................... 4

*Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*,
   733 F.3d 1251 (9th Cir. 2013) ................................................................ 17

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4931-2519-3088

*Sidney-Vinstein v. A.H. Robins Co.*,
  697 F.2d 880 (9th Cir.1983) .................................................................... 4

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App. 4th 210 (2010) ................................................................. 25

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) .................................................................... 8

*Space Data Corp. v. X*,
  2017 WL 3007078 (N.D. Cal. July 14, 2017) ................................ 20, 21, 22, 23

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .................................................................. 16

*Veronica Foods Co. v. Ecklin*,
  2017 WL 2806706 (N.D. Cal. June 29, 2017) ..................................... 20, 21, 23

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................ 16

*X Corp. v. Ctr. for Countering Digital Hate, Inc.*,
  724 F. Supp. 3d 948 (N.D. Cal. 2024) ........................................................ 9

*ZL Techs., Inc. v. Does 1-7*,
  13 Cal. App. 5th 603 (2017) ................................................................... 11

**Statutes**

18 U.S.C. § 1836(b)(1) ........................................................................... 24

18 U.S.C. § 1839(3) ............................................................................... 21

18 U.S.C. § 1839(5) ............................................................................... 22

18 U.S.C. § 1839(6) .......................................................................... 15, 19

Cal. Civ. Code § 3426.1(a) .................................................................. 15, 19

Cal. Civ. Code § 3426.1(b) ...................................................................... 22

Cal. Civ. Code § 3426.1(d) ...................................................................... 21

Cal. Civ. Code § 3426.1(d)(2) ................................................................... 24

Cal. Civ. Proc. Code § 337 ...................................................................... 17

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4931-2519-3088

Cal. Civ. Proc. Code § 425.16 ................................................................ *passim*

Cal. Civ. Proc. Code § 425.16(b)(1) ................................................................ 3

Cal. Civ. Proc. Code § 425.16(c)(1) ............................................................... 16

Cal. Civ. Proc. Code § 425.16(e)(1) ................................................................. 3

Cal. Civ. Proc. Code § 425.16(e)(2) ................................................................. 3

Cal. Civ. Proc. Code § 425.16(e)(3) ................................................................. 3

Cal. Civ. Proc. Code § 425.16(e)(4) ................................................................. 3

Cal. Gov't Code §§ 7920.000 *et seq.* .............................................................. 7

O.C.G.A. § 50-18-70 *et seq.* ........................................................................... 7

RCW 42.56 ..................................................................................................... 7

RCW 42.56.270(1) ......................................................................................... 16

RCW 42.56.520(4) ........................................................................................... 7

Tex. Gov't Code ch. 552 .................................................................................. 7

**Rules**

Fed. R. Civ. P. 8(a)(2) .................................................................................... 16

Fed. R. Civ. P. 9(g) .................................................................................. 14, 17

Fed. R. Civ. P. 12(b)(6) ..................................................................... 1, 16, 17, 25

Fed. R. Civ. P. 12(f) .................................................................................. *passim*

**Regulations**

Wash. Admin. Code § 468-06-080(8) ............................................................... 7

4931-2519-3088

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Neology's First Amended Complaint ("FAC") is a textbook strategic lawsuit against public participation ("SLAPP"). It targets core protected activity, including emails to public agencies raising issues of public concern, and lawful public records requests authorized by statute, and tries to dress it up as trade libel, interference, trade secret misappropriation, and unfair competition. But the speech at issue, which is criticism of tolling technology affecting public billing and consumer trust, is precisely the kind of advocacy that California's anti-SLAPP statute exists to protect. Neology's attempt to weaponize litigation against those who exercised their rights to petition the government and participate in public debate cannot stand.

Five of the challenged claims (Counts III through VII) arise from protected activity and must be stricken under California's anti-SLAPP law. The Consumer Protection Agency ("CPA") emails that Neology attacks were directed to officials at public agencies and spoke directly to matters of consumer harm, public spending, and system reliability. Likewise, Neology's repeated complaints about Defendants' use of public records laws, which are open-government tools specifically designed to promote transparency in public procurement, cannot be twisted into "unlawful conduct" simply because the disclosures might be inconvenient.

Even if the anti-SLAPP statute did not apply, the claims would still fail. Neology does not identify any actionable falsehood, a plausible theory of trade secret ownership in jointly-developed materials or misuse by QORE4, or a non-circular theory of contract interference as to QORE4. It also pleads no concrete damages as to the bulk of its claims. Some claims are also preempted or time-barred.

This motion seeks to strike all allegations arising from protected activity under Section 425.16, and under Rule 12(f), and dismiss all seven counts under Rule 12(b)(6). At a minimum, the Court should strike the allegations that improperly target Defendants' lawful participation in public discourse and government processes.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO SPECIAL MOTION TO STRIKE CASE NO. 25CV1744 JES (BJW)

4931-2519-3088

## II.    RELEVANT FACTUAL BACKGROUND

Neology pleads that, in or about March 2025, emails were sent to numerous public agency customers under the banner of an apparently fictitious entity, "Consumer Protection Advocates." (Dkt. 31, ¶¶ 102–104.) The FAC alleges these emails purported to raise "critical technical flaws" affecting tolling operations and consumer billing, and included statements Neology characterizes as false and misleading about its RFID technology (including assertions that it is "outdated" and that Neology is the "only vendor" supplying it), along with recommendations that agencies require transition to "modern" technology. (Dkt. 31, ¶¶ 104–106; *see also*, Dkt. 31, Ex. D.) The FAC further alleges that Neology later learned that Mullis sent the emails on behalf of QORE4, allegedly to benefit QORE4. (Dkt. 31, ¶¶ 107–109.)

Neology pleads that the statements to its customers injured its reputation and that, even if the full impact on future business is not yet known, it expended "significant resources," including retaining a public relations firm, to communicate with customers and respond to the challenged statements. (Dkt. 31, ¶ 110.)

Neology further alleges that Mullis (on behalf of QORE4) made "numerous public records requests across the nation" to multiple transportation authorities, including the Washington Department of Transportation (WSDOT) and other public entities. (Dkt. 31, ¶¶ 97–101.) As pled, a key flashpoint arose when WSDOT notified Neology of a records request from "Joe Mullis of QORE4," disclosed that WSDOT had released redacted records, and conveyed that the requester challenged Neology's proposed redactions, thereby prompting Neology to seek court intervention to protect the information. (Dkt. 31, ¶¶ 98–101.) Neology alleges that it suffered harm from such efforts to prevent the disclosure of its trade secrets. (Dkt. 31, ¶ 101.)

Based on the above conduct, and other conduct alleged in the FAC, including alleged theft of confidential information and trade secrets during Mr. Mullis's employment at Neology, Neology asserts causes of action for breach of contract, intentional interference, misappropriation of trade secrets (state and federal statutes),

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4931-2519-3088

trade libel, and unfair competition under the UCL. (Dkt. 31, ¶¶ 111–168.)

## III.    <u>LEGAL STANDARD</u>

California's anti-SLAPP statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Code Civ. Proc. § 425.16(b)(1).

An "act in furtherance" of the right of petition or speech includes: any written or oral statement or writing "made before a legislative, executive, or judicial proceeding," (§ 425.16(e)(1)); "in connection with an issue under consideration or review" before such a proceeding (§ 425.16(e)(2)); any statement "made in a place open to the public or a public forum in connection with an issue of public interest," (§ 425.16(e)(3)); and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" (§ 425.16(e)(4)).

In federal court, Section 425.16 applies to state law claims and is enforced via a two-step, burden-shifting procedure. *See*, *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261–63 (9th Cir. 2013) (en banc). First, the defendant must show the challenged claim "arises from" protected activity. *Id.* at 261. Courts focus on the acts supplying the elements of the claim, not every background fact. *See*, *Park v. Board of Trustees*, 2 Cal.5th 1057, 1063–64 (2017). Second, if prong one is satisfied, the burden shifts to plaintiff to demonstrate a probability of prevailing, by adducing admissible evidence that, if credited, would support a judgment in its favor. *Makaeff,* 715 F.3d at 261; *Mann v. Quality Old Time Serv., Inc.*, 120 Cal.App.4th 90, 103–05 (2004).

Under Rule 12(f), a party may move to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid

4931-2519-3088

the expenditure of time and money that must arise from litigating spurious issues by

dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697

F.2d 880, 885 (9th Cir.1983).

## IV.  ARGUMENT

### A.  Counts III, IV, V, VI, and VII Arise from Protected Petitioning Activity and Public-Issue Speech Protected Under Section 425.16 and the Noerr-Pennington Doctrine

#### 1.  The CPA Emails to Public Agencies Concern Regular Public Consumers and Public-Contracting Issues

Neology's intentional interference, trade libel, and UCL claims (Counts V, VI,

Count VII, respectively) all target the CPA emails in which Defendants allegedly

criticized Neology's tolling systems. (Dkt. 31 ¶¶ 102–110, 148–154, 155–163, 164-

168.) Those emails were directed to public agency transportation authorities

responsible for use of public funds to purchase and implement toll road systems that

ultimately pass charges on to the average consumer driving on such toll road. (Dkt.

31 ¶¶ 102–106; Dkt. 31, pp. 60-61.) However, the communications to the various

government and government-adjacent agencies about the performance and integrity

of public-facing technology used to ultimately bill consumers plainly qualify as

protected petitioning activity under various subparts of Section 425.16. Indeed, as

recently as October 6, 2025, Neology and others were sued in a class action captioned

as *RJL Industries Inc. V. Kapsch Trafficcom USA, Inc. et al.*, Case No. 7:25cv9277

(S.D.N.Y) for issues related to improper billing of customers – the very core issues

addressed in the email to the agencies.[1] *See*, Request for Judicial Notice ("RJN"), ¶1.

---

[1] The concerns in the lawsuit naming Neology are not confined to a single jurisdiction. Rather, EZ-Pass and related tolling systems operate on an interoperable, multi-state basis, such that transponders issued by one state authority are routinely read and billed by toll facilities operated by other states, including New York. As a result, any defect affecting transponder data integrity has predictable interstate consequences, impacting consumers and toll agencies beyond New York alone. This interoperability shows why raising concerns about tolling accuracy and known defect mechanisms is squarely within the realm of consumer-protection petitioning.

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4931-2519-3088

1    Neology cannot prove that communications on this issue, which is now in litigation

2    on a class-wide basis, does not qualify as protected under the anti-SLAPP laws.

3    The specific portions of the emails (which are all directed to "Internal Audit,

4    Compliance, and Investigative Oversight Teams" at the various agencies) ("Asserted

5    Statements" 1 through 5) are: (1) "We are writing to bring to your attention *a critical*

6    *technical flaw affecting tolling operations and consumer billing across California's*

7    *toll road systems*" (Asserted Statement 1); (2) "Several California toll agencies utilize

8    toll transponders supplied by Neology, whose technology is based on *an outdated*

9    *RFID integrated circuit* (IC) developed in 2008 …" (Asserted Statement 2); (3)

10   "Many agencies have since transitioned to modern RFID ICs that *eliminate* this

11   problem …" (Asserted Statement 3); (4) "Given that *Neology remains the only*

12   *vendor still supplying this outdated technology*, there is no justifiable reason why

13   California toll agencies should continue to rely on RFID ICs that do not meet modern

14   industry standards …" (Asserted Statement 4); and (5) the agency should "[m]andate

15   the transition to modern RFID transponders with built-in flip bit detection and

16   correction to *eliminate* this issue.") (Asserted Statement 5) (italics added for the

17   allegedly "false" and "misleading" parts of the statements). (Dkt. 31, pp.60-61.)

18   California courts routinely hold that such communications fall within section

19   425.16. *See*, *e.g.*, *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1265–68 (2008)

20   (letter by employer to third parties warning them not to contract with a former

21   employee was "petitioning activity" protected under § 425.16 and sent in the context

22   of protected conduct); *ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 993, 1009–

23   10 (2001) (statements criticizing public company's technology and financial

24   condition in communications to SEC and others were protected under § 425.16 in

25   part because they were intended to "solicit" an SEC investigation); *Neurelis, Inc. v.*

26   *Aquestive Therapeutics, Inc.*, 71 Cal.App.5th 769, 787–93 (2021) (competitor's

27   communications to FDA seeking to delay rival's drug approval were protected

28   petitioning and subject to anti-SLAPP).

- 5 -

Here, while Neology avoids the full contextual utterances in the pleading, Neology attaches the email allegedly sent to the "Internal, Compliance, and Investigative Oversight Teams" of the various government agencies. (Dkt. 31, pp.60-61.) Nowhere in the email is there any mention of any products allegedly on offer to the agencies. Whereas Neology alleges that the communications were intended to influence the agencies to terminate contracts (Dkt. 31, ¶ 150), again, Neology points to no statement asking the agencies to terminate any contract – if any existed. Quite the contrary indeed, the email at issue specifically states that "Neology has a history of innovation and should be fully capable of developing transponders with updated safeguards" and proposes that the agencies "[m]andate the transition to modern RFID transponders" and "[e]ngage with all transponder vendors—including Neology—to push for updated technology that aligns with current industry standards and consumer protection expectations." (Dkt. 31, pp. 60-61.) This falls squarely within protected activity under section 425.16. Neology cannot prove otherwise.

### 2.  <u>Public-Records Requests and Challenges to Redactions Are Core Petitioning Activity Protected Under Section 425.16</u>

Also embedded at the core of the claims for trade secret misappropriation, intentional interference with contract, and violation of the UCL (Counts III, IV, V, VI, and VII) are core allegations that Mullis and QORE4 engaged in improper or unlawful conduct by allegedly trying to unlawfully obtain Neology's trade secrets and confidential or proprietary information through making public records requests. (Dkt. 31, ¶¶ 97, 98, 99, 100, 101, 150, 165.) Neology is thus suing over Defendants' use of public records laws and related proceedings to obtain information from records Neology submitted to public agencies in an effort to win bids. Neology alleges that Mullis and QORE4 filed multiple public records requests with various agencies and Neology was forced to expend significant resources to prevent Mullis and QORE4 from obtaining the "trade secrets." (Dkt. 31, ¶¶ 97–101.) However, public records requests and ensuing review thereof are prototypical lawful petitioning and public-

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4931-2519-3088

1  issue activity that cannot form the basis of any claim of unlawful conduct. *Iloh v.*

2  *Regents of Univ. of Cal.*, 94 Cal.App.5th 947, 956–960 (2023).

3      Indeed, all relevant laws applicable to the listed agencies authorize public

4  records requests: (1) Washington State Department of Transportation (WSDOT)

5  (Washington Public Records Act, RCW 42.56); (2) Humber Bridge Board (UK)

6  (Freedom of Information Act 2000); (3) Los Angeles County Metropolitan

7  Transportation Authority (LA Metro) (California Public Records Act, Cal. Gov't

8  Code § 7920.000 *et seq*. ("CPRA")); (4) North Texas Tollway Authority (NTTA)

9  (Texas Public Information Act, Tex. Gov't Code ch. 552); (5) San Diego Association

10  of Governments (SANDAG) (CPRA); (6) Georgia State Road and Tollway Authority

11  (SRTA)  (Georgia  Open  Records  Act,  O.C.G.A.  §  50-18-70  et  seq.);

12  (7) Transportation Corridor Agencies (TCA) (Orange County toll agencies) (CPRA);

13  (8) Riverside County Transportation Commission (RCTC) (CPRA); and (9) County

14  of Riverside (Riverside County) (CPRA). Neology cannot prove otherwise.

15      Neology's apparent challenges to conduct such as challenging its redactions in

16  public records (Dkt. 31, ¶ 98) fares no better. Specifically, in the WSDOT dispute

17  where Neology alleges Mr. Mullis and QORE4 allegedly "unlawfully" attempted to

18  obtain its alleged trade secrets, the statute is unambiguous: It requires agencies to

19  "establish mechanisms for the most prompt possible review of decisions denying

20  inspection" (which includes partial denials/redactions). RCW 42.56.520(4).

21  WSDOT, a Washington State agency, has, consistent with the directive, implemented

22  the internal review requirement through WAC 468-06-080(8) ("Review of denial of

23  request") which provides that a requester may petition in writing for internal

24  administrative review of an initial denial or partial denial, and that WSDOT will

25  affirm or reverse. Wash. Admin. Code § 468-06-080(8). That is what happened here.

26  Neology cannot characterize what is clearly defined by law as unlawful conduct.

27      In short, the laws governing the agencies Neology identifies *invite* persons to

28  request records, authorize challenging redactions, and do not preclude litigation over

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4931-2519-3088

partial disclosures. Yet, Neology characterizes this conduct as improper attempts to access its confidential or proprietary information and trade secrets. Not so. California courts have expressly recognized that suits targeting a requester's public records acts activity are strategic lawsuits against public participation. In *Iloh v. Regents of Univ. of Cal.*, for example, a professor sought to enjoin the University of California from complying with a CPRA request about her academic work and later added the requester as a party. *Iloh*, 94 Cal.App.5th at 956–960. The Court of Appeal held that her petition "arose from" the requester's protected activity, and that the requester's anti-SLAPP motion should have been granted as to prong one. *Id.* at 960.

Neology is doing the same thing here. Unlike *Iloh*, however, where the plaintiff was simply suing to prevent disclosure, Neology does more. It is suing and intentionally embedding lawful activity in its causes of action to intimidate Mullis and QORE4 from exercising core petitioning activity through the threat of seeking damages and business tort remedies. That is a textbook strategic lawsuit against public participation by Mullis and QORE4. No matter how creative Neology attempts to embed these allegations into its claims, the core conduct (filing lawful public records requests) is lawful and, as a matter of law, cannot form the basis of challenged illegal conduct. "In the anti-SLAPP context, the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity." *Navellier v. Sletten*, 29 Cal. 4th 82, 89, 52 P.3d 703, 709 (2002).  It is here.

There is no reasonable dispute that Counts III, IV, V, VI, and VII are based on core protected activity, at least in substantial part – lawful public records act requests and activity related to the same. "The propriety of the [public records act] request is the very crux of the petition; without the [public records act] request, there would be no petition." *Iloh*, 94 Cal. App. 5th at 959. Defendants' conduct is also independently shielded by the Noerr–Pennington petitioning doctrine, which bars tort liability for efforts to influence governmental action absent sham petitioning. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929-931 (9th Cir. 2006). Neology cannot show otherwise.

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4931-2519-3088

### 3.    At a Minimum, Allegations Attacking Lawful Conduct Should be Stricken Under Section 425.16 and Rule 12(f)

Neology will likely argue that some of the causes of action can stand even absent the allegations of public records act requests. But the Court cannot authorize Neology to embed lawful and protected activity into its claims. The California Supreme Court has made clear: even if a party combines allegations of protected activity with unprotected activity, the anti-SLAPP motion may be used to strike allegations of protected activity even without defeating a pleaded cause of action or primary right entirely. *Baral v. Schnitt*, 1 Cal. 5th 376, 396, 376 P.3d 604, 617 (2016) ("Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing."); *see, e.g., X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948, 963 (N.D. Cal. 2024) (holding that even if the challenged conduct is alleged to be improper [as Neology does for the records requests], that goes to the second prong; ultimately granting the motion to strike).

Here, Neology cannot plausibly argue that the causes of action as pled can stand absent the "unlawful" public records act requests. It explicitly alleges the public records act requests in Paragraphs 97 through 101, before it alleges the counts *and incorporates paragraphs 97 through 101*. Thus, any count that incorporates the paragraphs and alleges harm or damages is using petitioning activity as part of its damages narrative, and thus is subject of the motion to strike. (*See*, Dkt. 31, ¶¶ 111, 118, 119, 124, 125, 126, 135, 136, 137, 146, 147, 148, 153, 154, 155, 161-163, 164, 168); *see*, *X Corp.*, 724 F. Supp. 3d at 966 (finding allegations did "more than add color" to the complaint where they were intertwined with claimed damages). Like in *X Corp.*, Neology allegations of damages are closely linked to the allegations Neology raises about Defendants engaging in protected activity that allegedly harmed Neology. "The element of damages in each state law claim therefore arises … from [the challenged speech or conduct]." *X Corp.*, 724 F. Supp. 3d at 967; *see*,

4931-2519-3088

1  *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1015 (2021) ("a claim is subject to

2  an anti-SLAPP motion to strike if its elements arise from protected activity.").

3  **B.    Neology Cannot Show a Probability of Prevailing as to Counts III,**

4  **IV, V, VI, and VII Based on Protected Activity**

5  Because Defendants satisfy prong one, Neology must show a probability of

6  prevailing on each claim. It cannot. "[A movant's] anti- SLAPP motion should be

7  granted when a [non-movant] presents an insufficient legal basis for the claims or

8  when no evidence of sufficient substantiality exists to support a judgment for the

9  plaintiff." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)

10  (citations and quotations omitted). "[A] plaintiff seeking to demonstrate the merit of

11  the claim 'may not rely solely on its complaint, even if verified; *instead, its proof*

12  *must be made upon competent admissible evidence*.'" *Monster Energy Co. v.*

13  *Schechter*, 7 Cal.5th 781, 788 (2019) (emphasis added; citations omitted); *see also*,

14  *Optional Capital, Inc. v Akin Gump Strauss, Hauer & Feld LLP*, 18 Cal.App.5th 95,

15  118–119 (2017) (anti-SLAPP motion "is an evidentiary motion," which requires

16  "evidence that is admissible at trial," not just "unverified allegations" or "averments

17  on information and belief.")

18  **1.    Counts V, VI, and VII Fail as a Matter of Law Because**

19  **Neology Cannot Prevail on Its Claims of Trade Libel**

20  i.    The FAC Does Not Plead Actionable False Statements

21  To start, the trade libel claim (which is at the core of Counts V, VI, and VII)

22  requires publication of a false statement *of fact* that specifically disparages the quality

23  of property or products and causes *special damages*. *See*, *ComputerXpress*, 93

24  Cal.App.4th at 1010–11; *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th

25  277, 291-295 (2014).

26  Here, to start, the FAC text characterizes *but does not quote* the complete

27  verbatim statements in emails allegedly sent by Mullis and QORE4 cautioning public

28  agencies that Neology's systems risk overbilling consumers or failing to meet future

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4931-2519-3088

regulatory demands. (Dkt. 31, ¶¶ 102–110.) This omission is notable. In the defamation context, the words at issue must be specifically identified in their context. *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1608 (Ct. App. 1991); *ZL Techs., Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 616 (2017). Here, the five statements (Asserted Statements 1 through 5) in their *full* context (Dkt. 31, pp.60-61) are anything but actionable.

The statements are classic statements of opinion, prediction, and advocative puffery not based on verifiable false statements of fact. California courts consistently reject trade libel claims based on such evaluative speech. For example, in *ComputerXpress*, statements that a public company was "insolvent," "risky," and engaged in "pump and dump" tactics were protected opinion when read in context as part of a broader critique of technology and finances. *ComputerXpress*, 93 Cal.App.4th at 1011–13. Like in *ComputerXpress*, the "specific words" Neology takes issue with in the CPA emails are plainly advocacy pieces aimed at addressing governmental decisions and regulatory oversight that ultimately affect consumers. They express views about technological obsolescence, risk, and policy and not objective facts such as "Neology's product failed a specific performance test on date X." Neology's disagreement with those views does not convert them into falsities.

First, Asserted Statements 1 and 2 are indisputably non-actionable statements. Indeed, Neology does not clearly state that the statements are false or actionable.

Second, Asserted Statements 3 and 5, which use the word "eliminate" (which Neology takes issue with) are also non-actionable evaluative opinions of the degree of performance. Indeed, Neology itself states essentially the same thing publicly:(1) "This blog post explores the nature of a bit flip and the solutions available *to ensure bit flip integrity issues don't result in incorrect charges for road-users*." (2) "Reliable, accurate systems are essential for maintaining road-user trust in toll road systems and confidence that when they drive on toll roads, they're *billed accurately every time*." (3) "However, that's not stopping agencies, operators, and toll tag manufacturers from pursuing innovative solutions to bring the rate of *possible*

4931-2519-3088

*bit flip occurrence down to 0%*." (4) "Advanced Error Detection and Correction Algorithms … *detect and correct bit flip errors in real-time*." (5) "Neology's next generation of … uses these advanced algorithms for error detection and correction." *See*, RJN, ¶2. These statements about no incorrect charges, touting real-time detection and correction or errors, and saying the occurrence rate can be driven "down to 0%" are not distinguishable from the "eliminate" word Neology attacks.

<u>Third</u>, Asserted Statement 4 is equally not actionable. In the context of advocacy, "or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 601, 552 P.2d 425, 428 (1976) (statements in a bulletin stating union officers were self-interested and focused on their own political aspirations and not those of the members of the union were not actionable); *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999) (stating that "'rhetorical hyperbole,' 'vigorous epithet [s],' 'lusty and imaginative expression[s] of [ ] contempt,' and language used 'in a loose, figurative sense'" are not actionable).

Courts evaluating accused statements must focus on the editorial context to ascertain if the statements are actionable. *Ferlauto*, 74 Cal. App. 4th at 1401. Here, the portion of the statement that "Neology remains the only vendor still supplying this outdated technology" is, especially in its context, not a statement of fact. By illustration only, Neology's own rebuttal to the statement in the FAC does not track the language used in the statement but instead provides new context about the "6C Coalition" and referring to other manufacturers "*using* different technology" (as compared to "supplying" such technology). (Dkt. 31, ¶ 105.) In other words, Neology itself fails to provide a direct denial of the statement it calls blatantly false.

Even all the above aside, the phrase "only vendor still supplying this…technology" is packed with interpretive variables that make it hard to treat as a

- 12 -

4931-2519-3088

cleanly provable factual assertion. Is it among vendors supplying that specific customer or vendors supplying the United States market? Under the totality of the circumstances, Neology cannot prove that the statement is actionable.

ii.    The Context of Publication and the Specific Audience Illustrate that the Statements are Not Actionable.

In the trade libel context, the audience to which the statements were made matters. *Bently Rsrv. LP v. Papaliolios*, 218 Cal. App. 4th 418, 427 (2013). "The contextual analysis requires that courts examine the nature and full content of the particular communication, *as well as the knowledge and understanding of the audience targeted by the publication*." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 701 (2007) (emphasis added). That analysis is critical.

The statements were made not to the broad general public that is unfamiliar with the alleged technology but to state agencies that Neology itself indicates are aware of the issue addressed in the communications. *See*, RJN, ¶2. Specifically, Neology states of the issue: (1) "[I]t has been studied by chip manufacturers, tolling agencies, and toll industry consortia for over ten years." (2) "It's been found to be so rare, that no U.S. tolling agency or toll industry certification consortium has mandated the requirement for bit flip correction in its RFID tag standards." (3) "The Bit flip data integrity challenge in RFID chipsets is a known issue across all users of RFID technology." (4) "One challenge that transportation agencies sometimes face is the issue of bit flip data integrity in RFID chipsets." *Id*. If the audience was fully *knowledgeable* on the issues (as Neology states), then Neology cannot plausibly show that the audience received Asserted Statements 1-5 as anything but non-actionable statements about an issue over which parties had differing opinions.

iii.    Neology Fails to Plead Trade Libel Special Damages with the Required Specificity

Even if any statement were actionable, Neology's trade libel claim independently fails for lack of special damages. A trade libel plaintiff must plead

- 13 -

4931-2519-3088

special damages in the form of "pecuniary damage" that has been realized or liquidated as in the case of specific lost sales. *Erlich v. Etner*, 224 Cal.App.2d 69, 73–76 (1964); *Aetna Cas. & Surety Co. v. Centennial Ins. Co*., 838 F.2d 346, 351 (9th Cir. 1988). Plaintiffs must alleged more than general losses and expenditures. *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-3954 DDP (MANx), 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014); *Franklin Fueling Sys., Inc. v. Veeder-Root Co*., No. S-09-580 FCD/JFM, 2009 WL 2462505, at *5 (E.D. Cal. Aug. 11, 2009). Civil Rule 9(g) also fundamentally establishes that special damages must be specifically stated. Fed. R. Civ. P. 9(g).

Here, Neology does nothing of the sort. Neology alleges only generalized reputational harm and states that it spent "thousands of dollars" on public relations consultants and attorneys' fees to mitigate the harm. (Dkt. 31, ¶¶ 153, 161, 168.) In fact, Neology concedes that it has not yet identified any identifiable actionable loss from the conduct. Dkt. 31, ¶ 110 ("Neology cannot yet know the impact of Defendants' false and misleading statements …"). That is precisely what the law finds as insufficient: mere allegations of impairment of reputation and standing in the community or expenditures on counter-speech and litigation do not satisfy the special-damages requirement. Neology must "identify particular customers and transactions of which it was deprived as a result of the libel." *Mann*, 120 Cal.App.4th at 109–10. Because Neology cannot cure this defect by truthfully converting those nonactionable costs as "trade libel" damages, Count VI fails as a matter of law.

## 2.    The Interference and UCL Claim (Count V and VII) Cannot Stand on Protected Petitioning and Non-Actionable Speech

Neology's interference claim (Count V) and UCL claim (Count VII) incorporate the same CPA emails and public records activity. (Dkt. 31, ¶¶ 145–147, 165–171.) To the extent those claims rest on speech that this Court recognizes as protected and non-actionable, they fare no better than the trade libel claim.

Additionally, for the UCL's "unlawful" prong, Neology relies, in substantial

- 14 -

part, on alleged violations of trade secret law. (Dkt. 31, ¶¶ 165–166.) However, to the extent there is no viable "unlawful access" theory where defendants used public records statutes, there is no predicate violation, and the "unlawful" UCL claim collapses. *See*, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143 (2003).

Furthermore, regarding "fraudulent" conduct, lobbying of government agencies with advocacy emails is the opposite of fraudulent. Neither is it fraudulent to do exactly what open records laws and public contracting systems are designed to elicit, i.e., encourage public access. In sum, conduct is not fraudulent if it encourages debate about how public money is spent and how consumers are being treated fairly.

Finally, Neology pleads no consumer-facing unfairness that is actionable under the UCL. Its grievances are purely those of a competitor against another. And, in the competitor context, Neology fails to plead facts that show that the alleged conduct equates to or threatens an incipient violation of the antitrust laws. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).

Under *Baral v. Schnitt*, this Court may (and should) strike those portions of the interference and UCL claims that arise from protected conduct and lack merit, even if other, non-SLAPP-able theories survive. *Baral*, 1 Cal.5th at3 93–95.

### 3.    Counts III and IV as Pled Fail Because the "Unlawfulness" Theory of Public Records Requests Is Not Sustainable.

Neology tries to re-cast lawful public records activity as "unlawful" efforts to obtain trade secrets. That theory is unsustainable. Both the DTSA and CUTSA distinguish between "improper means" and lawful acquisition. *See*, 18 U.S.C. § 1839(6) (defining "improper means" and excluding lawful methods); Cal. Civ. Code § 3426.1(a) (similar). Under either statute, "improper means" does not include obtaining information through "proper means" such as independent discovery or access authorized by law. Minus unlawfulness, Neology cannot sustain its "unlawful" access claims. Here, public records laws authorize requests and

4931-2519-3088

challenges. (*See*, IV.A.2) Moreover, while certain information is protected (*see*, RCW 42.56.270(1)), the Washington Supreme Court has held that even "trade secrets" in public records are not categorically exempt from disclosure; rather, the party resisting disclosure must satisfy the strict injunction standard. *Lyft, Inc. v. City of Seattle*, 190 Wn.2d 769, 780–84 (2018). Neology availed itself of that statutory scheme by suing to block disclosure. (Dkt. 31, ¶ 98.)  That choice to engage that process cannot transform Defendants' invocation of rights into "unlawful" acts.

### C.    Defendants Are Entitled to Attorneys' Fees and Costs

A "prevailing defendant" on an anti-SLAPP motion "shall be entitled to recover that defendant's attorney's fees and costs." Cal. Code Civ. P. § 425.16(c)(1); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). Defendants shall, consistent with applicable law, file a separate motion regarding these amounts after this Motion is granted.

### D.    Counts I through VII Should Be Dismissed under Rule 12(b)(6)

For each of the reasons cited above, the counts at issue are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint, facilitating dismissal if the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Even though Rule 8(a)(2) sets a liberal pleading standard, a plaintiff must rely on more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Even under the liberal standard, a court is not required to accept bare legal conclusions, deductions, or inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Here, Plaintiff's Counts I though VII should be dismissed under Rule 12 (b)(6), or at a minimum, any impertinent matter should be stricken and Plaintiff ordered to replead the claims consistent with applicable law. Of particular note, Count V (trade libel) fails for each of the reasons asserted above. (*See*, Section IV.B.1)

4931-2519-3088

1.   **<u>Count I (Breach of Contract) Should Be Dismissed: It Pleads
No Recoverable Damages and is Partly Time-Barred</u>**

i.   <u>Count I Fails to Allege Plausible Recoverable Damages
Beyond Nominal Damages</u>

To state a breach of contract claim, a plaintiff must plead not just breach but also resulting damages proximately caused by the breach. *See*, *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Rule 12(b)(6) requires dismissal where a complaint fails to plausibly allege such damages. *See*, *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555–56. Here, Count I contains only a conclusory assertion that "[a]s a proximate result of Mullis's acts, Neology has suffered general and special damages in an amount to be determined at trial." (Dkt. 31, ¶ 115.) Contrary to Rule 9(g), Neology pleads no actual facts linking any alleged breach (whether the supposed "diversion" to email or failure to return data) to a specific economic loss it suffered. Nor does it plead special damages. "A specific statement of special damages requires not just the total lump sum, but a statement of the specific items which make up the lump sum." *City & Cnty. of S.F. v. Tutor-Saliba Corp.*, No. 02-5286 CW, 2005 WL 645389, at *17 (N.D. Cal. March 17, 2005). Without a plausible causal link to actual economic harm, Count I fails to state a claim for damages and should be dismissed or, at a minimum, limited to nominal damages.

ii.   <u>Alleged Breaches Before July 8, 2021 Are Time-Barred
Under California Law</u>

The statute of limitations for a breach of written contract is four years. Code Civ. Proc., § 337. The case was filed on July 8, 2025. Dismissal is appropriate where the running of the statute of limitations is apparent. *See*, *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013). Here, the FAC pleads multiple alleged "diversion" incidents where Mullis forwarded company materials in May 16, 2020, November 11, 2020, January 13, 2021, March 31, 2021 and April 9, 2021. Neology does not plead facts that plausibly show that this conduct

- 17 -

was hidden from it. Because the conduct is on its face time barred, Count I should be dismissed, or the Court should strike all allegations of pre-July 8, 2021 conduct.

## 2. Count II (Intentional Interference with Contract by QORE4) Is Not Plausible on Its Face Because it is Circular

Under California law, a cause of action for interference with contract lies only against outsiders to the contract. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994); *PG&E v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990) (interference tort protects contracting parties from disruption by a third person who is not a party to the contract). Here, Neology's own pleading makes its intentional interference claim against QORE4 (Count II) circular and implausible.

Specifically, Neology alleges that Mullis "is the founder, sole Managing Member, and Chief Executive Officer of QORE4" and that he "enticed two former Neology executives to join his business." (Dkt. 31, ¶ 6.) Rightly so, because Mr. Mullis is the sole member of QORE4. It also alleges that Mullis, on behalf of QORE4, engaged in various conduct on behalf of QORE4. (Dkt. 31, ¶¶ 6, 7, 8, 9, 13, 14, 20, 90, 95, 96, 97, 108, 151, 156.) In sum and substance, QORE4's conduct is always pleaded as Mullis's conduct on behalf of QORE4.

Against that backdrop, the intentional interference count (Count II) alleges that "at all times, QORE4, through Mullis, was aware" of Mullis's Employment Agreement with Neology (Dkt. 31, ¶ 121), and that "QORE4 intentionally induced Mullis to breach the confidentiality provisions of his Employment Agreement" by "inducing him to divert confidential information and trade secrets to QORE4 and to use that information for QORE4's benefit." (*Id.*, ¶ 122.) Critically, the only actor identified is Mullis himself: QORE4's awareness exists "through Mullis" (Dkt. 31, ¶ 121), and QORE4's supposed "inducement" consists of Mullis, as QORE4's sole member, manager, and CEO, allegedly encouraging Mullis, the contracting employee, to breach his contract. (Dkt. 31, ¶¶ 5–6, 115–16, 121–22.) In substance, Neology is not pleading a distinct third-party "stranger" that interfered with a

- 18 -

4931-2519-3088

contract; it is pleading that Mullis, wearing his QORE4 hat, induced Mullis, wearing his former-employee hat, to breach. The theory therefore collapses into the noncognizable notion that Mullis, through his wholly-controlled LLC (which acts through its members),[2] "induced" himself to breach. Moreover, QORE4 was formed after Mullis supposedly diverted emails. It could not induce breach that predated it.

### 3. <u>Counts III and IV(Trade-Secrets) Fail to State a Claim</u>

Count III and IV for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") and California's Uniform Trade Secrets Act ("CUTSA") should be dismissed. Even taking the FAC at face value, Plaintiff does not (1) identify the specific protectable trade secrets with reasonable particularity; (2) plausibly allege that the supposed "secrets" are not publicly disclosed or readily ascertainable from other sources; or (3) plead a non-conclusory theory of misappropriation by use, disclosure, or "improper means" or damages. The claims fail under *Twombly* and *Iqbal*, under this Circuit's law on trade secret pleadings, and under the statutes. "Improper means" is limited to things like theft, bribery, misrepresentation, or breach of a duty of secrecy, and expressly does not include "reverse engineering, independent derivation, or *any other lawful means of acquisition*." 18 U.S.C. § 1839(6); Cal. Civ. Code § 3426.1(a). The FAC misses these elements and otherwise convolutes the elements so much that it is impossible to delineate clearly.

i.  <u>Plaintiff Does Not Identify the Trade Secrets with Reasonable Particularity</u>

The Ninth Circuit has held that a trade secret plaintiff must identify the trade secrets and carry the burden of showing that they exist, and must describe the secret with enough particularity to separate it from matters of general knowledge in the trade. *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) (citations omitted). District courts in this Circuit apply the same requirement at the pleading stage: the complaint must provide "reasonable" detail such that the

---

[2] *Reliant Life Shares, LLC v. Cooper*, 90 Cal. App. 5th 14, 31 (2023).

4931-2519-3088

defendant can prepare a defense and the court can cabin discovery. *Space Data Corp. v. X*, 2017 WL 3007078, at *8–9 (N.D. Cal. July 14, 2017); *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *13–15 (N.D. Cal. June 29, 2017).

Here, Plaintiff does the opposite. The FAC lumps together vast swaths of information under broad labels such as confidential and proprietary business information (*see*, *e.g.*, Dkt. 31, ¶¶ 4, 43, 53, 68,127-130, 138-140); "proposals," "pricing information," and "customer" opportunities" (Dkt. 31, ¶¶ 26, 39, 44, 101, 2, 47, 68-70, 59, 129, 140), "pipeline" information, "relationships," "strategic partnerships," and board decks, "strategy presentations"(*see*, *e.g.*, Dkt. 31, ¶¶ 31, 41, 45, 48, 50, 58, 43 (b)) and similar catch-all categories. Yet, nowhere does Neology articulate with particularity what within these broad groupings allegedly constitutes a trade secret as opposed to "confidential" information or industry-level information.

Courts in this Circuit reject that approach. In *Imax*, for example, the Ninth Circuit affirmed judgment against the plaintiff because it failed to identify which "dimensions and tolerances" of its projector were secret and instead described an undifferentiated mass of "attributes" that overlapped with public knowledge. *Imax*, 152 F.3d at 1170. District courts have also dismissed complaints that recite broad categories such as "confidential business information," "customer lists," or "opportunities" without tethering them to a specific secrets. *Veronica Foods*, 2017 WL 2806706, at 14–5 (dismissing where plaintiff pointed to general categories of information without distinguishing from public disclosures); *Space Data*, 2017 WL 3007078, at 2-3 (earlier dismissal where plaintiff failed to sufficiently identify trade secrets and distinguish them from public information). Such is the case here.

Plaintiff broadly alleges and does not provide clarity about what elements of any specific documents or customer names are secret, how those elements differ from information known to other tolling vendors, public agencies, or the general public as disclosed by Neology's own public-facing statements on its website, or how the purported "compilations" are unique in their selection or arrangement. Without that,

4931-2519-3088

the trade secret counts fail under *Imax*, *Space Data*, and *Veronica Foods*.

                ii.    <u>Many Alleged "Secrets" Are Publicly Disclosed or Obtainable from Neology's Website and Public Sources</u>

Even if the FAC identified specific subject matter, Plaintiff still must plausibly allege that the information is not "generally known" or "readily ascertainable" by proper means. 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d). The Ninth Circuit has held that "matters of general knowledge in the trade" cannot be trade secrets. *Imax*, 152 F.3d at 1164–65. It has also expressly held that information anyone can find from public resources is not a trade secret. *Mgmt. & Eng'g Techs. Int'l, Inc. v. Info. Sys. Support, Inc.*, 490 F. App'x 31, 34 (9th Cir. 2012).

Here, the FAC claims as "secret" such basic items as the identity of Neology's customers and strategic partners, the existence and general contours of tolling projects, "opportunities" (¶¶ 59–67), "joint" products (¶ 64), and "relationships" (¶¶ 59, 93, 129, 140). Nonetheless, Neology itself announces these relationships, the contracts, the strategic partnerships, and broad swaths of information it now broadly claims are trade secrets. *See*, RJN, ¶¶3-14. Furthermore, these examples from Neology's website and pages are only some examples of what Neology publicizes.

In *Veronica Foods*, the court dismissed trade secret claims where the plaintiff publicly disclosed substantial customer and supplier information through websites, blogs, and social media, holding that such public disclosures destroy any trade secret protection they might otherwise have had. *Veronica Foods*, 2017 WL 2806706, at 15. The court also rejected attempts to re-package publicly-known business relationships as an amorphous "confidential business information" compilation. *Id.*

The same logic applies here. To the extent Plaintiff claims that the identity of tolling customers and partners, the existence of opportunities with third parties, or the broad description of projects and relationships are trade secrets, those allegations are implausible on their face given Neology's own public announcements and the public procurement records of those agencies. Neology cannot simply re-label

4931-2519-3088

heavily-publicized relationships, contracts, and "opportunities" as "secret."

        iii.    <u>The FAC Fails to Plead Plausible Misappropriation by Use or Disclosure</u>

Even if Neology had adequately alleged protectable secrets, Neology still must allege that each Defendant misappropriated those secrets. 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b). Here, the FAC's misappropriation allegations are conclusory. While Neology alleges that Mullis forwarded emails, proposals, and other materials from his Neology account to a personal account,[3] the FAC merely alleges "on information and belief" that QORE4 must be using Neology's alleged trade secrets because QORE4 allegedly participates in tolling projects, markets itself as experienced, and "moved quickly" into certain opportunities.

There is particularly no factual bridge between the alleged Neology documents and any specific conduct by QORE4. There is no allegation that any QORE4 proposal or marketing pieces copy distinctive Neology language, design, or pricing, or that QORE4 submitted proposals containing content from the forwarded emails to any of the "unique" customers whose identities are trade secrets; no allegation that QORE4 underbid Neology based on particular Neology pricing or margin data in the misappropriated materials and if so, which materials; no allegation that any tolling agency ever saw or relied on a Neology document provided by QORE4; no allegation that any feature of QORE4's products, services, or strategies, if at all, is traceable to a described Neology "secret" rather than ordinary know-how; and so on.

Courts dismiss such "they stole something, therefore they must be competing successfully" theories. In *Space Data*, for example, the court dismissed trade secret claims where the plaintiff alleged that Google's Project Loon "must have" used its information but failed to plead concrete facts showing how Google's conduct breached any duty or how particular secrets mapped onto Project Loon's design.

---

[3] Neology also conflates conduct of third parties with Mr. Mullis and QORE4, without any non-conclusory facts attributing it to Defendants. (Dkt. 31, ¶¶68-71).

4931-2519-3088

*Space Data*, 2017 WL 3007078, at *2. The court condemned allegations that merely asserted "use vastly exceeds the use permitted" under a contract without factual support that such use actually occurred and how. *Id.* at 2. Similarly, *Veronica Foods* rejected allegations that a competitor "used" trade secrets because it successfully solicited plaintiff's customers, holding that such allegations "merely describe competition" and are insufficient without specific facts tying the success to a misappropriated trade secret. *Veronica Foods*, 2017 WL 2806706, at 13-15.

Here, the FAC offers even less. It alleges that Mullis had access to a "library" of documents, that he (Mullis) later associated with QORE4, and that QORE4 does business in the tolling industry. (Dkt., ¶¶ 3, 73.) That is not enough to plead misappropriation under *Twombly* and *Iqbal*, let alone under *Space Data* and *Veronica Foods*. The DTSA and CUTSA require factual allegations of how Defendants' conduct falls within the statutory definition of misappropriation. Generalized references to "using" and "benefitting from" "confidential information" without allegations substantially tying the alleged trade secrets to marketplace use do not suffice. At minimum, the claims against QORE4 fail for lack of any non-conclusory allegation that QORE4 acquired, used, or disclosed any identified trade secret.

        iv.   <u>Lawful Public-Records Requests and Procurement Processes Are Not "Improper Means" as a Matter of Law</u>

As addressed above (section IV.A.2), Neology's claims fail to the extent they are based on public records acts activity. CUTSA and DTSA do not criminalize or civilly penalize use of open-records laws that governments themselves created. To the extent the FAC predicates misappropriation on public records requests, it fails as a matter of law and should be dismissed with prejudice on that theory or stricken under the anti-SLAPP statute, and Rule 12(f).

        v.   <u>Neology Does Not Plausibly Allege Ownership of Certain Information Claimed as "Trade Secrets"</u>

The FAC also blurs critical lines about ownership. Plaintiff appears to assert

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4931-2519-3088

*their* trade secret rights in: (1) information created and documented *in collaboration* with "strategic" partners and subcontractors, including a 97-page *joint* proposal detailing Neology's work as subcontractor for its "strategic partner" and describing "how" Neology "partners with other contractors" to deliver the project. (Dkt. 31, ¶¶ 25, 43, 51–54.) However, the DTSA grants a civil cause of action only to an "owner of a trade secret" – not someone who co-developed, or cooperated with another. 18 U.S.C. § 1836(b)(1). And CUTSA likewise presupposes proprietary rights. Cal. Civ. Code § 3426.1(d)(2). Where the information is jointly developed with partners, or is owned by agencies or joint ventures, or has been effectively contributed to the public domain via public contracts and public awards, Plaintiff cannot unilaterally convert it into a "trade secret." Here, the FAC never cleanly pleads: (1) which specific compilations are exclusively owned by Neology in any of the emailed documents; (2) how they differ from information that belongs to joint venture or strategic partners or public agencies; (3) how Neology retained proprietary control after public disclosures and public procurement of such alleged trade secrets; or (4) how Neology's partnerships with other parties is not basic industry knowledge, etc. This is independently fatal to large swaths of the trade-secret counts.

<strong>vi.</strong>    <u>Neology Does Not Allege Trade Secret Harm or Damages</u>

Neology merely recites that it has suffered harm and is entitled to damages but does not identify what harm it has suffered, whether in the form of a lost contract traceable to the trade secrets allegedly misappropriated, publicly disclosed secrets, a lost bid based on the allegedly misappropriated secrets, or other cognizable non-conclusory harm. (Dkt. 31, ¶¶ 135, 146.) The formulaic recitations are insufficient.

<strong>4.    <u>Counts I and Count VII Fail as Preempted by CUTSA</u></strong>

In Count I, Neology purports to state that Mullis also breached the employment agreement by disclosing the confidential information to QORE4, and for QORE4's benefit. (Dkt. 31, ¶ 110.) In Count VII, Neology pleads the same conduct as actionable. These are both preempted by CUTSA. A claim is preempted by CUTSA

- 24 -

to the extent that claim "is based on the 'same nucleus of facts as the misappropriation of trade secrets claim.'" *Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1157 (E.D. Cal. 2017) (quoting *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.,* 171 Cal. App. 4th 939, 955 (2009)). Here, Plaintiff's contract claim tracks the same misappropriation theory alleged for the CUTSA claim and is at its core a quasi-contract / implied-in-law restitution that is preempted by CUTSA. *See*, *Silvaco Data Sys. v. Intel Corp*., 184 Cal. App. 4th 210, 236 (2010). The UCL claim fails to the extent it depends on the same misappropriation. *K.C. Multimedia*, 171 Cal. App. 4th at 961 (unfair competition claims preempted)

### 5. Count VII Fails to the Extent Underlying Claims Fail and In So Far as It Relies on Theories Not Pled in the FAC.

Where the underlying violations fail, a UCL claim based thereon also fails. *Martinez v. Ford Motor Co*., No. 22-CV-1082-MMA (BGS), 2022 WL 14118926, at *4 (S.D. Cal. Oct. 24, 2022); *Krantz v. BT Visual Images, L.L.C*., 89 Cal. App. 4th 164, 178 (2001). Thus, to the extent Counts 1 to VI fail, the UCL claim (Count VII) also collapses. For the UCL, Neology also purports to assert an unpled violation – intentional interference with "prospective" business relationships. (Dkt. 31, ¶ 135.) However, Plaintiff does not plead such a count and does not plead requisite facts of such "prospective business relationships." *Rincon Band of Luiseno Mission Indians etc. v. Flynt*, 70 Cal.App.5th 1059, 1112 (Cal. App. 2021). Thus, the claim fails to the extent it is conclusory and not properly alleged as a predicate violation.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their special motion to strike Counts III through VII under California's anti-SLAPP statute and award attorneys' fees and costs. If the claims survive the anti-SLAPP challenge, in the alternative, and independently, Defendants request that the Court dismiss Counts I through VII under Rule 12(b)(6) and strike all other non-actionable, redundant, immaterial, impertinent, or scandalous matter under Rule 12(f).

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4931-2519-3088

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  December 17, 2025

SNELL & WILMER L.L.P.

By: _____
Nicholas S. Kawuka
Attorneys for Defendants
QORE4 LLC and Joseph N. Mullis

- 26 -

4931-2519-3088