Nicholas S. Kawuka, Bar No. 297579
nkawuka@swlaw.com
SNELL & WILMER L.L.P.
3611 Valley Centre Drive, Suite 500
San Diego, California 92130-3324
Telephone:  858.434.5020
Facsimile:   858.434.5006

Attorneys for Defendants
QORE4 LLC and Joseph N. Mullis

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEOLOGY, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH N. MULLIS, an individual; QORE4 LLC, a Nevada limited liability company; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 25CV1744 JES (BJW)<br><br>**DEFENDANTS QORE4 LLC AND JOSEPH N. MULLIS'S REPLY IN SUPPORT OF NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. § 425.16 AND FED. R. CIV. P. 12(F) AND MOTION TO DISMISS UNDER FED. R. CIV. L. 12(B)(6)**<br><br>Date:      January 28, 2026<br>Time:      9:00 a.m.<br>Courtroom:  4B<br><br>Complaint Filed:  July 8, 2025<br>Trial Date:  None Set |

SNELL
& WILMER

4903-5766-7722

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................1

II.     ARGUMENT .........................................................................................1

      1.    Public-Records Requests and Challenges to Redactions Are Core Protected Activity and are Core to Counts III, IV & VII.............................................................................1

          i.    The FAC Illustrates the Public Records Activity Is Core to Neology's Allegations of Impropriety and Harm ..............................................................................1

          ii.   Neology's Rebrand of the Public Records Requests as *Context* is Contradicted by Its Arguments and the FAC. ........................................................................2

          iii.  The Court Should Strike Allegations of the Public Records Requests Because that Conduct is Not Unlawful ........................................................................3

          iv.   Neology Does Not Have a Likelihood of Prevailing as to the Public Records Requests for Counts III, IV & VII .........................................................................4

      2.    Neology Cannot Carry Its Burden to Invoke the Narrow Commercial-Speech Exemption as to the CPA Emails...............4

          i.    The Exemption Is Narrow and Plaintiff-Burdened; Neology Cannot "Plead Its Way" Into Section 425.17(c)..........................................................................4

          ii.   The CPA Emails Were Anonymous and Were Not for The Purpose or in the Course of Delivering Goods or Services.....................................................................5

          iii.  That the Communications Were Sent by a Competitor Does Not Reduce Neology's Burden; Neology Must Still Prove the Commercial Speech Exemption Applies .........................................................6

          iv.   The CPA Emails to Internal Audit, Compliance, And Investigative Oversight Teams Were Not Made To "Promote" or "Secure" QORE4 Sales or Transactions.................................................................7

4903-5766-7722

v. That the Audience Were Actual or Potential Customers Does Not Make the Speech Commercial Speech ..................................................................... 8

vi. Neology Does Not Have a Likelihood of Prevailing as to the CPA Emails about the **Bit Flip** Issue (and Attendant Issues) Which Are Core to Counts V, VI, VII .......................................................................... 9

(1) Neology fails to show the CPA emails contain provably false, actionable statements of fact. .................................................... 9

(2) Neology's statements about agency knowledge defeat reliance and defeat falsity assertions. ................................................. 11

(3) Neology also fails to plead special damages with the specificity Rule 9(g) requires ................. 12

3. Neology's Evidence Fails as to Counts III, IV, V, VI, & VII ................................................................................. 13

4. The Court Should Dismiss or Strike Neology's Claims ............ 13

i. The Court Should Dismiss or Strike Portions of Counts III-VII Because of the Defects Above ............... 13

ii. The Court Should Strike the Special Damages Allegations to the Breach of Contract Claim ................. 13

iii. The Court Should Dismiss Count II for Intentional Interference; It is Circular and Merely Theoretical ........ 14

iv. Neology's Alleged Trade Secrets Are Vaguely Asserted and Largely Publicly Disclosed by Neology Itself ................................................................. 14

III. CONCLUSION ........................................................................... 15

4903-5766-7722

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baral v. Schnitt,*
  1 Cal. 5th 376 (2016).................................................................................2, 3

*City & Cnty. of San Francisco v. Tutor-Saliba Corp.,*
  No. C 02-5286 CW, 2005 WL 645389 (N.D. Cal. Mar. 17, 2005)...................14

*Contemporary Services Corp. v. Staff Pro Inc.,*
  152 Cal.App.4th 1043 (2007)...............................................................7

*Demetriades v. Yelp, Inc.,*
  228 Cal.App.4th 294 (2014)................................................................9

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
  751 F.3d 990 (9th Cir. 2014)...............................................................14

*Emde v. San Joaquin Cnty. Cent. Lab. Council,*
  23 Cal. 2d 146 (1943)........................................................................11

*Hartford Cas. Ins. Co. v. Swift Distribution, Inc.,*
  59 Cal. 4th 277 (2014)........................................................................11

*Hawran v. Hixson,*
  209 Cal.App.4th 256 (2012)..................................................................5

*Hicks v. Grimmway Enters., Inc.,*
  No. 22-CV-2038 JLS (DDL), 2023 WL 3829689 (S.D. Cal. June 5,
  2023).....................................................................................................8, 9

*Iloh v. Regents of Univ. of Cal.,*
  94 Cal.App.5th 947, 956-960 (2023) .....................................................1

*Isuzu Motors Ltd. v. Consumers Union of United States, Inc.,*
  12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998).........................................13

*Mendoza v. ADP Screening & Selection Servs., Inc.,*
  182 Cal. App. 4th 1644 (2010)..............................................................7

*Mintz v. Blue Cross of California,*
  172 Cal. App. 4th 1594 (2009).............................................................14

4903-5766-7722

*Muddy Waters, LLC v. Superior Court*,
    62 Cal.App.5th 905 (2021) .......................................................................... 5, 6, 8

*Neurelis Inc. v. Aquestive Therapeutics*,
    2022 Cal. Super. LEXIS 46216 (June 17, 2022) .................................... 12

*Neurelis, Inc. v. Aquestive Therapeutics, Inc.*,
    71 Cal.App.5th 769 (2021) ................................................................... 7

*Nichols v. Great Am. Ins. Companies*,
    169 Cal. App. 3d 766 (1985) .............................................................. 11

*Quidel Corporation v. Siemens Medical Solutions USA, Inc.*,
    612 F.Supp.3d 1131 (S.D. Cal. 2020) ............................................... 12

*Royal Holdings Techs. Corp. v. IP Video Mkt. Info Inc.*,
    No. 2:20-CV-04093-SB, 2020 WL 8225666 (C.D. Cal. Dec. 18,
    2020) ................................................................................................ 12

*SB Diversified Prods., Inc. v. Murchison*,
    2014 WL 3894353, at *9 (S.D. Cal. July 28, 2014) .......................... 13

*Simpson Strong-Tie Co. v. Gore*,
    49 Cal. 4th 12 (2010) ..................................................................*passim*

*Space Data Corp. v. X*, 2017 WL 3007078, at *8-9 (N.D. Cal. July 14,
    2017) ................................................................................................ 15

*Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of*
    *California v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995) ............................................................ 11

*StreamCast Networks, Inc. v. IBIS LLC*,
    No. CV05-04239MMM(EX), 2006 WL 5720345 (C.D. Cal. May 2,
    2006) ................................................................................................ 13

*Swiss Am. Trading Corp. v. Regal Assets*,
    LLC, No. CV 14-04960 DDP ASX, 2015 WL 631569 (C.D. Cal.
    Feb. 13, 2015) .............................................................................. 10, 12

*Taheri L. Grp. v. Evans*,
    160 Cal. App. 4th 482, 490 (2008) .................................................... 9

4903-5766-7722

*Veronica Foods Co. v. Ecklin*,
    2017 WL 2806706 (N.D. Cal. June 29, 2017) ....................................................... 15

*X Corp. v. Bonta*,
    116 F.4th 888, 902, n.10 (9th Cir. 2024) ............................................................. 8

*X Corp. v. Ctr. for Countering Digital Hate, Inc.*,
    724 F. Supp. 3d 948 (N.D. Cal. 2024) ............................................................ 2, 3

**Rules**

Fed. R. Civ. P. 9(g) ................................................................................................. 13

4903-5766-7722

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Neology's Opposition rests on relabeling and omission: it tries to impose liability for core protected petitioning (public-records requests and challenges to redactions) while pretending those allegations are mere "context," even though the FAC makes them central to Counts III, IV, and VII and to its damages theory. It likewise tries to dodge anti-SLAPP by declaring the anonymous "CPA" emails "commercial speech," but § 425.17(c) is narrow and plaintiff-burdened. Speech that does not identify the speaker or any goods or services of theirs or a competitor's, propose any transaction, or target a transactional audience cannot satisfy the statute's content, purpose, or audience elements; nor can mere competitor status supply what the speech lacks. And even at step two, Neology cannot show a probability of prevailing: it largely characterizes rather than quotes provably false factual assertions, its own allegations of agency knowledge undercut reliance, and its trade-libel and contract "special damages" remain non-itemized and deficient under Rule 9(g). For these reasons, and those in the moving papers, the Court should strike the protected allegations and derivative damages theory, dismiss or strike defective portions of Counts III–VII, strike the contract special-damages allegations, dismiss the circular interference claim (Count II), and require particularized, plausibly secret trade-secret allegations rather than a grab-bag of publicly disclosed categories.

## II.   ARGUMENT

### 1.   Public-Records Requests and Challenges to Redactions Are Core Protected Activity and are Core to Counts III, IV & VII

#### i.   The FAC Illustrates the Public Records Activity Is Core to Neology's Allegations of Impropriety and Harm

Neology cannot contest the basics: public records requests are core protected activity (*Iloh v. Regents of Univ. of Cal.*, 94 Cal.App.5th 947, 956–960 (2023)), and damages are part and parcel its trade-secret theories (FAC ¶¶ 135, 146, 168). It pleads

SNELL
& WILMER

4903-5766-7722

its claims as an attack on that protected activity and the costs of responding to it. Specifically, Neology alleges Mullis made "unlawful" public records requests, including "to obtain more of Neology's trade secrets and confidential information" (FAC ¶¶ 97–101), and that Neology was harmed because it had to fight disclosure, for example, after WSDOT advised it had received a request from "Joe Mullis of QORE4," produced redacted documents, and Mullis challenged the redactions, and that Neology purportedly had to seek a court order "through legal action" to protect the information (FAC ¶ 98). Neology further alleges it expended "significant resources" to prevent Mullis and QORE4 from obtaining purported trade secrets in its proposals (FAC ¶ 101). It then incorporates these same allegations into its CUTSA and DTSA causes of action (FAC ¶¶ 126, 137) and into its UCL claim (FAC ¶¶ 164–168), branding the requests "unlawful" and "unfair" and seeking damages for the very burden of resisting disclosure (FAC, 135, 146, 168). This is not "background" as Neology argues; it is core conduct which forms, at least in substantial part, the basis of Neology's damage theory and is thus subject to anti-SLAPP. See *X Corp. v. Ctr. for Countering Digital Hate, Inc*., 724 F. Supp. 3d 948, 963 (N.D. Cal. 2024).

ii.   <u>Neology's Rebrand of the Public Records Requests as</u>
<u>*Context* is Contradicted by Its Arguments and the FAC.</u>

Neology's attempt to rebrand its public-records allegations as mere "context" collapses under its own Opposition, its presuit demands, and the FAC. On the very page where Neology insists the public-records activity is not "core," it admits it pleads the requests "solely to show that they are being used for sham purpose" (Dkt. 35, p. 17) which is a concession that Neology is suing over petitioning conduct and trying to make it actionable by labeling it wrongful "sham" petitioning, not background. That is why Neology invokes *Baral v. Schnitt*, 1 Cal. 5th 376 (2016)'s "context" language while simultaneously arguing the *Noerr-Pennington* doctrine is "inapplicable" because it is "solely" using the requests to show a "sham" purpose: the "sham" label only matters because the underlying conduct is petitioning activity.

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4903-5766-7722

The presuit correspondence, which is attached to the FAC illustrates the same point. Neology demanded Mullis "promptly delete" documents from his personal email (Dkt. 31, p. 51); Mullis responded that the identified materials were "subject to public domain and not trade secrets," that "from the titles alone" many were "subject to public domain," and that vendor Q&A likely responded to a procurement "subject to public domain as well." (Dkt. 31, pp. 53-58) That exchange put Neology on notice that Defendants' position was that much of what Neology calls "confidential" is publicly available through procurement and public-records channels. That correspondence frames what the FAC now does: attack Defendants' use of those public-records processes while pretending the allegations are peripheral. And the FAC itself makes the public-records conduct a centerpiece of the alleged scheme and the claimed injury. That is the alleged course of wrongdoing and the alleged harm. It is not incidental scenery as Neology purports to argue now.

### iii.    The Court Should Strike Allegations of the Public Records Requests Because that Conduct is Not Unlawful

The California Supreme Court has made the point explicit: an anti-SLAPP motion can strike allegations of protected activity even if doing so does not eliminate an entire cause of action or the plaintiff's "primary right." *Baral v. Schnitt*, 1 Cal. 5th 376, 382 (2016). Federal courts apply the same principle. See, e.g., *X Corp. v. Ctr. for Countering Digital Hate, Inc*., 724 F. Supp. 3d 948, 963 (N.D. Cal. 2024). Neology cannot ask the Court to look past its own theory that Defendants' public records requests were "improper" and "unlawful," and that Neology suffered damages, including attorneys' fees and other expenditures, because it had to fight those requests. Those damages allegations are not window dressing; they are pleaded as part of the misappropriation and UCL theories and are the measure of the claimed injury. If, as Neology now insists, the public-records activity was merely "context," it could have pled its claims without making that protected activity and the expense of responding to it the centerpiece of its asserted wrongdoing and harm.

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4903-5766-7722

iv.    Neology Does Not Have a Likelihood of Prevailing as to the Public Records Requests for Counts III, IV & VII

Neology cannot show a likelihood of prevailing on any theory that turns on Defendants' public-records requests. Submitting Public Records Act–type requests to government agencies is classic petitioning activity protected by § 425.16(e) and the First Amendment. Neology's pleading confirms it is suing over that protected conduct: it labels the requests unlawful and improper, alleges injury measured by the expense of resisting disclosure, and seeks damages (including attorneys' fees and internal resources) for having to fight the requests. But anti-SLAPP is designed to prevent exactly that. The Court should strike the public-records allegations and the derivative damages theory built on them.

## 2.    Neology Cannot Carry Its Burden to Invoke the Narrow Commercial-Speech Exemption as to the CPA Emails

Neology's entire effort to escape anti-SLAPP liability as to the CPA emails turns on a single move: relabel the emails as "commercial speech" and declare the analysis "over." (Opp. 12–14.) That move fails for a simple reason. Section 425.17(c) is a narrow, plaintiff-burdened carveout and is not a "low-threshold" shortcut. *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 22-26 (2010). The plaintiff must prove each element of the exemption. *Id*. Neology proves none of the elements that matter, it tries to substitute pleading rhetoric ("must be taken as true") for the showing the statute requires, and conveniently avoids mentioning *RJL Industries Inc. v. Kapsch Trafficcom USA, Inc. et al*., Case No. 7:25cv9277 (S.D.N.Y) where it was sued for issues related to improper billing of customers – the very issues addressed in the CPA emails (Dkt.34-3, ¶1). That is not how Section 425.17(c) works.

i.    The Exemption Is Narrow and Plaintiff-Burdened; Neology Cannot "Plead Its Way" Into Section 425.17(c)

Neology tells the Court that "establishing commercial speech is a 'low threshold'" and that once § 425.17(c) applies, "the anti-SLAPP analysis ends." (Opp.

12.) Even if that is correct in the abstract (it is not), that is beside the point: Neology bears the burden to establish the exemption, and the exemption is narrow. *Simpson*, 49 Cal.4th at 26–34 (placing burden on plaintiff and articulating the four-part test); *Muddy Waters, LLC v. Superior Court*, 62 Cal.App.5th 905, 919-20 (2021) (emphasizing that Section 425.17(c) applies only to a "subset of commercial speech" specifically, "comparative advertising," and rejecting attempts to stretch it based on financial motive); *Hawran v. Hixson*, 209 Cal.App.4th 256, 271-73 (2012) (reiterating § 425.17's exemption is narrow and plaintiff-burdened).

Neology's approach flips that burden. It repeatedly insists that its allegation of "purpose" "must be taken as true at this stage" and that dismissal would be "improper" because it has not had discovery. (Opp. 14.) That is backwards. The commercial-speech exemption is not triggered by allegations of motive. It turns on what the speech actually is (representations of fact about the speaker's or a competitor's goods/services), why it was made (to obtain approval for, promote, or secure sales/transactions), and to whom it was directed (buyers/customers or those who influence them). *Simpson*, 49 Cal.4th at 30; *Muddy Waters*, 62 Cal.App.5th at 921–24. Neology cannot prove the exemption applies by avoiding what *the actual text of the speech* is, applying its own characterization and then ascribing some undeclared motive *not reflected in the speech itself*. If Neology needs discovery to prove the exemption applies to the speech (as it claims), that is indeed a reason the exemption fails on the current record; exactly as the burden framework contemplates.

ii.    The CPA Emails Were Anonymous and Were Not for The Purpose or in the Course of Delivering Goods or Services

Neology cannot escape a basic fact: the CPA emails never identified QORE4 or Mr. Mullis, and they did not promote any QORE4 goods or services. The commercial-speech exemption applies only to a "subset of commercial speech, specifically, "comparative advertising." *Muddy Waters*, 62 Cal.App.5th at 921–24. Comparative advertising presupposes the ordinary anatomy of advertising: a known

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO SPECIAL MOTION TO STRIKE CASE NO. 25CV1744 JES (BJW)

4903-5766-7722

speaker touting its own goods or services (or comparing them to a competitor's) to induce a sale or transaction. Neology's Opposition alleges the opposite: Defendants "cloak[ed] themselves in the guise of a consumer protection agency" (Opp. 14) and "posed as a non-existent 'Consumer Protection Advocates' organization" (Opp. 20). That is anonymous, masquerading speech by design, and the emails on their face did not identify QORE4, did not identify Mullis, did not mention any QORE4 product or service, and did not propose any transaction with the sender.

Speech that (i) does not identify the speaker as a vendor, (ii) does not mention the speaker's goods or services, and (iii) does not propose any transaction is not comparative advertising, and it cannot satisfy § 425.17(c)'s requirement that the speech be made "for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in," the speaker's goods or services. *Simpson*, 49 Cal.4th at30 (2010) (exemption turns on the nature of the challenged statements, not an incidental promotional motive).

Neology identifies no authority holding analogous anonymous speech qualifies for the commercial-speech exemption. And it certainly fails to identify any facts about any products of services that Mullis or QORE4 were ready to provide to any of the alleged recipients of the communications. Its theory reduces to an asserted motive of "they wanted to harm us and benefit themselves even though they chose not to identify themselves and any of their products or services" which does not satisfy the statute's elements. Put simply, Neology cannot simultaneously characterize the communications as "cloaked" consumer-protection advocacy aimed at oversight actors and then relabel them "commercial" to evade anti-SLAPP.

                    iii.   <u>That the Communications Were Sent by a Competitor Does Not Reduce Neology's Burden; Neology Must Still Prove the Commercial Speech Exemption Applies</u>

Neology appears to argue that once it later connected the emails to Mr. Mullis and QORE4, the exemption follows automatically. It does not. Competitor status is

not a shortcut; the exemption is element-by-element, and courts repeatedly refuse to apply it even where competitors are undisputed. *Neurelis, Inc. v. Aquestive Therapeutics, Inc*., 71 Cal.App.5th 769 (2021) (rival pharma competitors; § 425.17(c) inapplicable); *Simpson Strong-Tie Co., Inc. v. Gor*, 49 Cal.4th 12 (2010) (competitor/comparative-ad context assumed; § 425.17(c) inapplicable); *Contemporary Services Corp. v. Staff Pro Inc*., 152 Cal.App.4th 1043 (2007) (undisputed competitors; § 425.17(c) inapplicable). The point is simple: even if Neology could show Defendants were a competitor (*something Neology merely argues* but has not shown through competent evidence), it still must prove the CPA emails satisfy § 425.17(c)'s purpose, content, and audience requirements. It has not.

iv.    The CPA Emails to Internal Audit, Compliance, And Investigative Oversight Teams Were Not Made To "Promote" or "Secure" QORE4 Sales or Transactions

Even setting anonymity aside, the Opposition's own description of the emails defeats § 425.17(c). "Not all speech by a business enterprise constitutes 'commercial speech' …" *Mendoza v. ADP Screening & Selection Servs., Inc*., 182 Cal. App. 4th 1644, 1652 (2010).  Businesses also have a right to speak on matters that touch on public issues. *Id*. Neology must admit that the emails to agency teams and other government authorities, *including the Georgia State Inspector General*, did not ask the agencies to buy anything, did not identify QORE4 products, and did not request termination of any Neology contract. (Opp. 13–14.) Neology tries to replace statutory elements with inference, insisting it "need not identify a talismanic phrase" and that the "evident purpose" was to "disrupt Neology's customer relationships" and "advance QORE4's commercial interests." (Opp. 14.) The cases reject exactly that move. First, incidental commercial advantage is not enough. *Simpson* assumed the ad could be read as disparaging a product and conceded it was meant to generate business for the lawyer, yet held that did not transform the speech into § 425.17(c) commercial speech. *Simpson*, 49 Cal.4th at 30–34. The exemption turns on the nature

4903-5766-7722

of the challenged statements—not on a profit motive. *Id.* Second, a financial incentive does not magically convert critique into § 425.17(c) speech. *Muddy Waters* explains the statute targets a limited subset of commercial speech, that is, comparative advertising directed to customers. *Muddy Waters*, 62 Cal.App.5th at 921–24. Neology's "purpose" theory is precisely the kind of motive-driven relabeling these cases disallow. The Court should summarily reject it.

> v.    That the Audience Were Actual or Potential Customers Does Not Make the Speech Commercial Speech.

Neology's reliance on *Hicks v. Grimmway Enters., Inc*., No. 22-CV-2038 JLS (DDL), 2023 WL 3829689 (S.D. Cal. June 5, 2023) for the proposition that communications may be "commercial speech notwithstanding" discussion of "important public issues" (Opp. 13) does not solve its problem. Direction of speech to customers or potential customers is not the test. *X Corp. v. Bonta*, 116 F.4th 888, 902, n.10 (9th Cir. 2024) ("test for whether speech is commercial or non-commercial" did not turn on whether it is "directed to potential consumers … "); *Taheri L. Grp. v. Evans*, 160 Cal. App. 4th 482, 490 (2008) (not applying exemption even if "intended audience" was "an actual or potential buyer or customer… .")

*Hicks* is also distinguishable on its own terms. There, the defendant tried to limit the exemption to statements expressly referenced in the complaint. *Hicks*, 2023 WL 3829689, at *5 ("Defendant's attempt to limit the commercial speech exemption to the statements specifically referred to in Plaintiff's Complaint fails.") Here, Defendants have challenged Neology to identify (anywhere in the complete CPA emails) speech suggesting efforts to obtain approval for, promote, or secure sales or transactions of QORE4 products.  Neology identifies none. Instead, it asks the Court to assume that anonymous speech, sent under a "Consumer Protection Advocates" cover and aimed at audit, compliance, and oversight personnel, is commercial speech because it originated from Mr. Mullis. The Court need not stretch *Hicks* that far. The problem is not that the emails touch on public issues; it is that Neology still must

4903-5766-7722

prove the emails were made to secure QORE4 sales or transactions and targeted at a transactional audience, and based on the evidence thus far, it cannot.

Neology's own framing of the conduct here (masquerading as "Consumer Protection Advocates," issuing warning-style accusations, urging agencies to treat a purported defect as a public billing problem) highlights why the exemption fails. *Demetriades v. Yelp, Inc.*, 228 Cal.App.4th 294 (2014), is a useful contrast. There, the exemption applied because the challenged statements were Yelp's own affirmative representations about the quality or reliability of its own product feature (review filtering), used to induce commercial participation (advertising). That is classic § 425.17(c) territory: factual claims about the speaker's goods/services aimed at a transactional audience. Neology fails to identify any such statements here.

vi.   Neology Does Not Have a Likelihood of Prevailing as to the CPA Emails about the **Bit Flip** Issue (and Attendant Issues) Which Are Core to Counts V, VI, VII

(1)   *Neology fails to show the CPA emails contain provably false, actionable statements of fact.*

Neology invokes *Swiss Am. Trading Corp. v. Regal Assets*, LLC, No. CV 14-04960 DDP ASX, 2015 WL 631569, at *2 (C.D. Cal. Feb. 13, 2015) to argue the emails about the "bit flip" issue were "cloaked" with "gravitas" because they purportedly came from the "Consumer Protection Agency," and therefore must be statements of fact rather than opinion, prediction, advocacy, or otherwise non-actionable statements. *Swiss Am. Trading* does not establish any such rule, and Neology's framing highlights a deeper problem: *it characterizes the statements rather than quoting them*, because the text does not deliver the "provably false" factual assertions Neology needs to illustrate that it has a chance of prevailing.

Neology's treatment of the first two excerpts proves the point. For Asserted Statement 1 ("We are writing to bring to your attention a *critical technical flaw* affecting tolling operations and consumer billing across California's toll road

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO SPECIAL MOTION TO STRIKE CASE NO. 25CV1744 JES (BJW)

4903-5766-7722

systems") and <u>Asserted Statement 2</u> ("Several California toll agencies utilize toll transponders supplied by Neology, whose technology is based on an *outdated* RFID integrated circuit (IC) developed in 2008 …"), Neology calls them "[c]oncrete, testable assertions about product design, market adoption, and comparative performance, not rhetorical flourishes." But it never identifies what, precisely, is false. A "technical flaw" is not a disputed premise on Neology's website; "critical" is evaluative; and "outdated" is inherently debatable, not an objectively verifiable fact without a defined benchmark. The Opposition supplies labels, not falsity.

The same deficiency appears with <u>Asserted Statement 3</u> ("Many agencies have since transitioned to modern RFID ICs that *eliminate* this problem …") and <u>Asserted Statement 5</u> (the agency should "[m]andate the transition to modern RFID transponders with built-in flip bit (sic) detection and correction to *eliminate* this issue."). *Neology asks the Court to force the emails to state what they do not*: that "other modern RFID ICs would *eliminate the issue of mischarges*." Neology cannot point to any such claim in the email text; it supplies it by interpretation, while simultaneously insisting its own website statements must be "read in context."

Put simply, to the extent the accused speech and Neology's own statements on its website speak in terms of "eliminate" or "0%" bit flip occurrence, Neology cannot reasonably dispute that the statements turn on technical performance judgments which are quintessential opinion grounded in disclosed premises, not provable libel. As the Ninth Circuit holds, "[a] statement of opinion based on facts that are disclosed and not patently defamatory is not enough to prove defamation, even if such a statement is not justified or even if the statement is unreasonable." *Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995). In that setting, "readers are free to accept or reject the author's opinion based on their own independent evaluation of the facts." *Id*. Here, the only facts at issue are about the Bit Flip issue – the rest is not actionable.

<u>Asserted Statement 4</u> ("Given that Neology remains the only vendor still

- 10 -

supplying this outdated technology, there is no justifiable reason why California toll agencies should continue to rely on RFID ICs that do not meet modern industry standards …") fails for the same reason: Neology's falsity theory depends on importing external context ("other manufacturers in the 6C coalition") and redefining "use" and "supply" as synonymous. That is not how falsity works. Neology "cannot ascribe a meaning to assertedly defamatory matter other or broader than the words themselves naturally bear; it cannot add to, enlarge, or change the sense of the published words." *Emde v. San Joaquin Cnty. Cent. Lab. Council*, 23 Cal. 2d 146, 159–60 (1943); *Nichols v. Great Am. Ins. Companies*, 169 Cal. App. 3d 766, 775 (1985) ("The necessary element of a defamatory publication … cannot be supplied by reference to reports in which the defamatory innuendo appears only inferentially."); *Hartford Cas. Ins. Co. v. Swift Distribution, Inc*., 59 Cal. 4th 277, 290 (2014) (echoing *Nichols*). Stripped of the extraneous gloss Neology supplies, the passage is, at most, advocacy that agencies should demand "modern industry standards." And Neology does not even claim it was not supplying the "outdated" RFID ICs at issue; it mere argues other entities in a coalition not referenced anywhere in the emails (*who it fails to identify*) were "using" similar technology. The Court cannot rewrite the CPA emailS to match Neology's preferred falsity theory.

> (2)    Neology's statements about agency knowledge defeat reliance and defeat falsity assertions.

Neology's "gravitas" theory (that because the sender purportedly "cloak[ed]" itself as "Consumer Protection Advocates") does not explain how presumably sophisticated agency audit/compliance recipients (by Neology's own statements on its website (Dkt. 34-3, ¶2)) could have reasonably relied on allegedly novel false revelations when Neology itself alleges those agencies were aware of the Bit Flip issue and had studied it for years. On Neology's own framing, the emails are advocacy about a known issue, not deceptive "facts" inducing reliance. Neology therefore cannot carry step two's burden on falsity or reliance.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO SPECIAL MOTION TO STRIKE CASE NO. 25CV1744 JES (BJW)

4903-5766-7722

(3)    *Neology also fails to plead special damages with the specificity Rule 9(g) requires.*

Neology's trade-libel damages showing remains defective. It leans on two unpublished decisions to argue reputational harm or goodwill suffices. But *Neurelis Inc. v. Aquestive Therapeutics*, 2022 Cal. Super. LEXIS 46216, at \*2 (June 17, 2022) found adequacy where the plaintiff alleged some concrete pecuniary injury, i.e., that the plaintiff "lost the ability to raise money on favorable terms, among other damages," and it did not involve Rule 9(g). In any event, the California Supreme Court has never lowered the bar for pleading special damages in the trade libel context. Neology also relies on an unpublished our of district case, i.e., *Swiss America Trading Corp. v. Regal Assets, LLC*, 2015 WL 631569, at \*3 (C.D. Cal. Feb. 13, 2015), which allowed a trade libel claim to proceed on thin allegations. Defendants acknowledge the case exists, but it runs against the weight of authority: *Quidel Corporation v. Siemens Medical Solutions USA, Inc*., 612 F.Supp.3d 1131, 1138 (S.D. Cal. 2020) (rejecting *Swiss Am. Trading*'s approach, applying Rule 9(g), and noting the breadth of authority requires more); *Royal Holdings Techs. Corp. v. IP Video Mkt. Info Inc*., No. 2:20-CV-04093-SB (PLAX), 2020 WL 8225666, at \*11 (C.D. Cal. Dec. 18, 2020), reverse on other grounds in *Royal Holdings Techs. Corp. v. IP Video Mkt. Info, Inc*., No. 21-55048, 2022 WL 16832812 (9th Cir. Nov. 9, 2022) ("While X.Labs does allege certain dollar amounts, its identification of customers that refused to deal with it because of the alleged trade libel is lacking."); *SB Diversified Prods., Inc. v. Murchison*, 2014 WL 3894353, at \*9 (S.D. Cal. July 28, 2014) ("California district courts have consistently dismissed trade libel claims when special damages are not pled specifically"). Put differently, *Swiss Am. Trading* did not invalidate or limit Rule 9(g) as to making allegations of trade libel damages. Moreover, Neology's belated reference *in a declaration* to a $90,000 spend does not help. See *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998) (bare allegation of the amount of pecuniary loss is

1   insufficient for the pleading of a trade libel claim).

2   **3.    Neology's Evidence Fails as to Counts III, IV, V, VI, & VII**

3   In sum and substance, Neology's Opposition offers rhetoric about "gravitas"

4   and motive, but it does not supply what step two requires, specific, provably false

5   factual assertions, plausible reliance, and properly pleaded special damages under

6   Rule 9(g) that are critical to prevailing on its claims.  Neology's evidence, which

7   consists *solely* of the Steve Haddix declaration is riddled with *subjective* statements

8   such as "in my opinion" (¶4(b); 4(e)), "as far as I am aware" (¶4(c)), "[a]s far as I

9   know" (¶4(d)), "it seems" ( ¶8), "my understanding was" (¶8), "obvious to me" (¶5),

10  and "from my perspective" (¶6) that disclose no *objective* assertions relevant to the

11  Court's inquiry.  The declaration otherwise purports to allege facts that are nowhere

12  in the current pleading.  Neology has not proved that it can prevail on its claims.

13  **4.    The Court Should Dismiss or Strike Neology's Claims**

14                  i.    The Court Should Dismiss or Strike Portions of Counts III-

15                        VII Because of the Defects Above

16  For each of the foregoing defects and those in the moving papers relating to

17  anti-SLAPP liability, the Court should dismiss or strike portions of the counts under

18  Rules 12(b)(b) and 12(f) of the Federal Rule of Civil Procedure.

19                  ii.    The Court Should Strike the Special Damages Allegations

20                         to the Breach of Contract Claim

21  Neology's breach of contract claim alleges, in conclusory form, that "[a]s a

22  proximate result of Mullis's acts, Neology has suffered general and special damages

23  …," but pleads no facts identifying any "special damages," let alone the items

24  comprising them. Rule 9(g) is explicit: special damages "must be specifically stated."

25  Fed. R. Civ. P. 9(g). Neology's reliance on *StreamCast Networks, Inc. v. IBIS LLC*,

26  No. CV05-04239MMM(EX), 2006 WL 5720345, at *5 (C.D. Cal. May 2, 2006) and

27  similar authority hurts rather than helps: *StreamCast* held, "[t]o the extent

28  StreamCast seeks special damages, however, the allegation is insufficient." *City &*

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4903-5766-7722

1    *Cnty. of San Francisco v. Tutor-Saliba Corp.*, No. C 02-5286 CW, 2005 WL 645389,

2    at *17 (N.D. Cal. Mar. 17, 2005) likewise required itemization: "A specific statement

3    of special damages requires … a statement of the specific items which make up the

4    lump sum." And unlike those cases, Defendants here also move to strike surplusage;

5    not just to dismiss. With no supporting facts and no itemization, the "special

6    damages" allegation is improper under Rule 9(g) and should be stricken now.

7                    iii.     The Court Should Dismiss Count II for Intentional

8                           Interference; It is Circular and Merely Theoretical

9          Count II is circular on the face of the complaint. Neology pleads QORE4 is a

10   sole manager and member entity, and at the time of the alleged conduct, in substance,

11   "QORE4 was Mullis." Mullis therefore could not, "wearing a QORE4 hat," induce

12   himself to breach his own employment agreement. This is not interference by an

13   outsider, but a repackaged breach theory aimed at looping in an alter ego entity.

14   California law rejects such pleading. See, e.g., *Mintz v. Blue Cross of California*, 172

15   Cal. App. 4th 1594, 1604 (2009) (rejecting analogous interference allegations albeit

16   in a different posture). Critically, "Rule 8 requires a complaint to include 'a short and

17   plain statement of the claim showing that the pleader is entitled to relief' and

18   "plaintiffs must include sufficient 'factual enhancement' to cross 'the line between

19   possibility and plausibility.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*,

20   751 F.3d 990, 995 (9th Cir. 2014). Neology offers no such factual enhancement to

21   enable this claim to proceed as pled. Count II is implausible and should be dismissed.

22                   iv.     Neology's Alleged Trade Secrets Are Vaguely Asserted

23                          and Largely Publicly Disclosed by Neology Itself

24         Neology's Opposition leans on authorities addressing discrete, plausibly secret

25   technical information; not what the FAC pleads here: sweeping, amorphous

26   categories and shifting sets of "documents," untethered to any reasonably particular

27   identification, and spanning multiple "opportunities," "collaborations," and business

28   initiatives. That matters because trade-secret claims live or die on specificity and

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4903-5766-7722

secrecy; a party cannot plead broad swaths" of information and call it a secret while leaving Defendants (and the Court) to guess what, exactly, is allegedly misappropriated, i.e., what "proposals". *Space Data Corp. v. X*, 2017 WL 3007078, at *8–9 (N.D. Cal. July 14, 2017), *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *13–15 (N.D. Cal. June 29, 2017), and analogous cases counsel against this.

Neology's cited cases do not bless that approach neither and its distinctions are inapplicable to its own FAC which fails to substantially identify what is secret. None of Neology's authorities holds that a plaintiff may plead trade secrets as a grab-bag of general business topics, prospective deals, and partner relationships. And the FAC's overbreadth is not harmless: Neology's own public disclosures, shown in the <u>*Request for Judicial Notice* (Dkt. 34-3) ¶¶ 3-14</u>, describe the same kinds of opportunities, collaborations, and market-facing initiatives Neology now labels "trade secrets." Where the claimed "secrets" match what Neology publicly touts, secrecy is implausible on the face of the pleadings, and at best, the Court should require Neology to categorically define what it claims constitute its trade secrets.

Crucially, in the context of this specific proceeding, Neology's cited authorities for the proposition that certain information may be trade secrets cannot salvage Neology's broadly claimed trade-secrets particularly in light of the pre-suit correspondence informing Neology that certain information was "public domain." The Court should require Neology to allege what exactly is secret, and what is merely confidential information it wishes was allegedly not obtained by Defendants.

## III.    <u>CONCLUSION</u>

For these reasons and those in the moving papers, Defendants request that the Court grant their special motion to strike Counts III through VII under California's anti-SLAPP statute and award attorneys' fees and costs. *If any claims survive*, independently, Defendants request that the Court dismiss all counts under Rule 12(b)(6) and strike non-actionable, redundant, immaterial, impertinent, or scandalous matter under Rule 12(f) based primarily on the defects identified by Defendants.

4903-5766-7722

1    Dated:  January 21, 2025                    SNELL & WILMER L.L.P.

2

3                                               By:  /s/ Nicholas S. Kawuka
                                                    Nicholas S. Kawuka
4                                                   Attorneys for Defendants
                                                    QORE4 LLC and Joseph N. Mullis
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -

4903-5766-7722

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2026, a true and correct copy of the foregoing **DEFENDANTS QORE4 LLC AND JOSEPH N. MULLIS'S REPLY IN SUPPORT OF NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. § 425.16 AND FED. R. CIV. P. 12(F) AND MOTION TO DISMISS UNDER FED. R. CIV. L. 12(B)(6)** was filed electronically with the Clerk of the above-captioned Court utilizing the Court's CM/ECF system, resulting in an automatic transmission of a Notice of Electronic Filing to all counsel of record in the above-referenced proceeding.

*/s/ Nicholas S. Kawuka*
Nicholas S. Kawuka

DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES ISO
SPECIAL MOTION TO STRIKE
CASE NO. 25CV1744 JES (BJW)

4903-5766-7722